Sean P. Whalen (PA Bar ID 200709)
Joseph C. Monahan (PA Bar ID 87173)
VINTAGE LAW LLC
6 Coulter Avenue, Suite 1000
Ardmore, PA 19003
(484) 416-3207 (Whalen)
(484) 413-2319 (Monahan)
sw@vintage-law.com
jm@vintage-law.com

Stephan Matanovic (PA Bar ID 83459)
MATANOVIC LAW LLC
399 Market Street
Suite 360
Philadelphia, PA 19106
(215) 915-7978
smatanovic@matanoviclaw.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

———————————————————x
WILLIAM MORLOK, ADAM NOVICK,:
THEODORE LEWIS, individually and on:
behalf of all others similarly situated,    :    Civil Action No. 17- 4213
                                            :
Plaintiffs,                                 :
                                            :
v.                                          :
                                            :
CITY OF PHILADELPHIA,                       :
                                            :
Defendant.                                  :
                                            :
———————————————————X

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

Plaintiffs William Morlok, Adam Novick, and Theodore Lewis, individually and on behalf

of all others similarly situated (collectively referred to herein as "Plaintiffs") hereby respond in

opposition to the Motion to Dismiss for failure to state a claim filed by the City of Philadelphia (the "City").

**I.     INTRODUCTION**

This action arises out of the City's wrongful conduct with respect to retroactive elimination of the Plaintiffs' designated and exclusively reserved electric vehicle parking places ("EV Spaces"). Plaintiffs spent significant funds obtaining their respective EV Spaces in reliance on the City's ordinance creating a program designed to promote electric vehicle ("EV") use through the City, including the creation and reservation of such parking spaces. The importance of the EV Spaces cannot be overstated, as without such spaces EVs become virtually unusable.[1] Plaintiffs seek to enjoin the City from its ongoing wrongful conduct that continues to cause Plaintiffs irreparable harm.

The City's Motion to Dismiss is an extension of its bait-and-switch tactics concerning EVs. In November of 2007, the City, very publicly and with great national fanfare, legislatively encouraged its residents to use EVs by passing an ordinance through which City residents could qualify to obtain exclusively reserved EV Spaces. In reliance on this ordinance, the City induced sixty-eight (68) of its residents – Plaintiffs – to spend thousands of dollars to purchase EVs, the required EV-charging equipment and have said equipment installed, inspected and permitted. Pursuant to the 2007 ordinance, after making such expenditures each of the Plaintiffs obtained an exclusively reserved EV space in close proximity to their respective homes, serviced by the EV charging stations and related infrastructure that they purchased and installed.

---

[1] EVs must be plugged in and charged using the electric grid. *See* https://en.m.wikipedia.org/wiki/Electric_vehicle (accessed November 26, 2017).

In the spring of 2017, the City passed a new ordinance – tantamount to a bill of attainder because its application is retroactively targeted at Plaintiffs – that amended the City's 2007 ordinance. The amended ordinance retroactively stripped Plaintiffs of the exclusively reserved EV spaces to which they are entitled and which have already been granted to them. In passing the new ordinance, the City flagrantly violated Plaintiffs' due process and equal protection rights, and unjustly enriched itself at Plaintiffs' expense.

The City's Motion essentially boils down to a single argument – the 2017 ordinance is benign legislation of general application to all Philadelphia residents. Accordingly, the City asserts that Plaintiffs' Complaint should be dismissed because (a) such generally applicable legislation is not actionable on a procedural due process claim; (b) even were it actionable, the ordinance passes the deferential standard of review that the City argues should be applied; (c) Plaintiffs' are similarly situated to all other EV owners and, therefore, have no actionable equal protection claims; and (d) the City has not been unjustly enriched as it has not received a benefit.

The City's characterization of the 2017 ordinance is both inaccurate and disingenuous. The 2017 ordinance clearly does not apply to all Philadelphians equally, as it singles out for retroactive treatment the Plaintiffs (the only City residents who had submitted to the City's EV program and obtained exclusively reserved EV Spaces pursuant to their issued EV permits, which required the expenditure of significant sums of money) and impacts Plaintiffs much more harshly than any other City residents.

As described more fully below, the Plaintiffs have stated valid claims based on violation of their rights under the Due Process Clause and the Equal Protection Clause, and have stated a valid state law claim for unjust enrichment. Contrary to the City's contention, notwithstanding the legislative nature of the City's action, Plaintiffs are nevertheless entitled to procedural due process,

which rights have been violated. Moreover, the City's passage of the amendment that stripped Plaintiffs' of their EV spaces violates their rights to substantive due process, as retroactive application of the amendment is not rationally related to a legitimate state interest. Plaintiffs' rights under the Equal Protection Clause have also been violated, as the amendment at issue treats them far worse than others similarly situated, a distinction not rationally related to any legitimate state interest. Finally, Plaintiffs have stated a valid unjust enrichment claim, as they have expended significant funds to install charging stations and related infrastructure, which constitute a benefit to the City for which the City has paid nothing, both in terms of the EV charging infrastructure that Plaintiffs have installed, and the reputational "boost" the City has realized by virtue of the EV Program. Accordingly, the City's Motion is without merit and should be dismissed.[2]

## II.   FACTUAL BACKGROUND

On November 15, 2007, City Council Bill No. 070788, introduced and championed by then-Council member (now Mayor) James Kenney, added a new section of the Philadelphia Code, Section 12-1131, entitled "Electric Vehicle Parking;" thus, creating the "EV Program". *See* Complaint at ¶ 16. The City launched this groundbreaking EV Program (which Plaintiffs believe to be the first of its kind in the country), which allowed EV drivers to install EV-charging infrastructure in front of their homes and thus promoted EV-use for the obvious environmental

---

[2] Should the Court for any reason grant the City's Motion, Plaintiffs respectfully request that the Court grant them leave to amend their Complaint to cure any basis for dismissal. *See e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3rd Cir. 2007) ("[I]n civil rights cases, district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.").

4

benefits, as well as to burnish the City's image as a technology-forward, progressive city.³ The EV Program recognized that EV Spaces served by EV charging stations were vital to such use because without such exclusively dedicated spaces, EVs are not viable. Pursuant to the EV Program, after conducting an "investigation determining need through the Philadelphia Parking Authority [the "PPA"]" and after the PPA "has approved of use of the location for practicality and feasibility of traffic operations," the PPA had the discretion to consider whether to approve an application and create a designated, exclusively–reserved electric vehicle parking space. *Id*. at ¶ 17. The EV Program did not require the PPA to approve the application, even if the applicant satisfied all of the criteria set forth in Section 12-1131, but could do so in the exercise of its discretion, much as it would for a curb cut, loading zone or a handicap parking spot. *Id*.⁴

In reliance on the EV Program, Plaintiffs each:

- purchased or leased an EV – a prerequisite to apply for an EV permit through the EV Program – as defined in Section 12-1131(1);
- registered the EV with the Pennsylvania Department of Transportation;
- paid for, and arranged for the installation of, an approved EV charger at the curb in front of his or her home, adjacent to the area which he or she desired to have approved for an EV Space pursuant to Section 12-1131(3)(b)(.3);⁵
- applied to the PPA for approval of an EV Space
- paid all fees associated with such applications; and

---

³ *See* http://www.philly.com/philly/business/20150506_Buy_an_electric_vehicle__apply_for_a_city_parking_space_to_charge_it.html (accessed November 26, 2017).
⁴ Once Defendant had granted an application in the exercise of its discretion, the Streets Department was required to erect a sign at the location of the exclusive electric vehicle parking space, designating it as such. *Id*. at ¶ 18.
⁵ By installing the curbside electrical vehicle chargers, solely at their own cost and expense, Plaintiffs each made substantial improvements to their own property which benefitted public property by expanding the EV charging infrastructure throughout the City, at no cost to the City. *Id*. at ¶¶ 21- 22.

5

- submitted all materials in support of their respective applications as required by the PPA and Section 12-1131.

In response to Plaintiffs' respective applications and above-listed actions, the PPA granted its approval for the exclusively–reserved, designated electric vehicle parking spaces, and each Plaintiff thus obtained such a parking space at their place of residence, all in conformity with the EV Program. *Id.*, at ¶ 23. A total of sixty-eight Philadelphians, residing in various neighborhoods around the City, were issued EV permits pursuant to the EV Program.

In a baseless about face and in violation of the EV Program and Plaintiffs' EV permits issued thereunder, in April 2017, City Council passed Bill No. 170093-A, which amended Section 12-1131, and which specifically targeted the Plaintiffs with punitive and unlawful retroactive changes to the EV Program.[6] Bill No. 170093-A prevented the issuance of any new EV permits and retroactively stripped Plaintiffs of their EV Spaces, the acquisition of which cost Plaintiffs' tens of thousands of dollars each to obtain in accordance with the EV Program. Specifically, Bill No. 170093-A amended Section 12-1131(c), providing that instead of prohibiting all parking in EV Spaces by non-EVs, the spaces were now only reserved for EV use from 6:00 p.m. to 6:00

---

[6] The City's contention, raised throughout its Memorandum, that the changes to the EV Program impact "all Philadelphians," is flatly misleading; only Plaintiffs have EV parking spaces, and, therefore, only Plaintiffs were hurt by the amendments. In essence, the amendments to the EV Program constitute a bill of attainder, legislative action that retroactively impacts either a named individual or easily ascertained members of a group so as to inflict punishment on them without a trial. *See Artway v. Att'y Gen. of N.J.*, 81 F.3d 1235, 1247 (3rd Cir.1996) (*quoting Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798) (citations omitted). The amendments to the EV Program do precisely that: the ordinance adversely impacts "easily ascertained members of a group" (the Plaintiffs) and targets them for availing themselves of the original EV Program. "[W]hether legislative action curtailing a privilege previously enjoyed [such as the exclusive EV parking] amounts to punishment depends upon 'the circumstances attending and the causes of the deprivation.'" *Garner et al. v. Bd. of Public Works of City of Los Angeles, et al.*, 341 U.S. 716, 722, 71 S.Ct. 909 (1951)(citations omitted). The fact that the amendment to the EV Program operated retroactively to cause harm to Plaintiffs eviscerates the City's argument that it was merely a legislative act affecting all Philadelphians.

a.m. *Id*. at ¶ 24.  In short, from 6:00 a.m. to 6:00 p.m., anyone can park in front of the Plaintiffs' EV charging stations, blocking their owners from the ability to use their own property, rendering the EV useless if the battery happened to be discharged.  *Id*.

Tellingly, when presented with Bill No. 170093-A for signature, Mayor Kenney – the original champion of the EV Program – refused to sign the Bill, setting forth his disagreement therewith.  Regardless, pursuant to the provisions of Section 2-202 of the City's Home Rule Charter, having not been signed and returned to City Council within ten days, the amendment became effective on April 20, 2017 even without the Mayor's signature.  *Id*. at ¶ 25.

## II.     Standard of Review

Fed. R. Civ. P. 12(b)(6) imposes a significant burden on the moving party, requiring a defendant to demonstrate that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *see Hedges v. United States*, 404 F.3d 744 750 (3rd Cir. 2005).  "A complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Determining whether a complaint states a plausible claim for relief will, […], be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*.  However, the basic tenets of the Rule 12(b)(6) standard of review have remained static.  *See Spence v. Brownsville Area Sch. Dist*., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations.  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232-34 (3rd Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Moreover, the Court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3rd Cir. 2006).  Put simply, the Court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Pinkerton v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3rd Cir. 2002).

Here, Plaintiffs have sufficiently pleaded claims for relief against the City. Therefore, the Court should deny the City's Motion in its entirety.

### III.  ARGUMENT

#### A.  Plaintiffs Have Adequately Pleaded Their Due Process Claim

##### 1.  Plaintiffs Have Stated a Claim for Violation of Procedural Due Process

The Fourteenth Amendment provides that no state may "deprive any person life, liberty, or property without due process of law."  U.S. Const. amend XIV, § 1.  "'To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury.'"  *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3rd Cir. 2009) (*quoting Elmore v. Cleary*, 399 F.3d 279, 281 (3rd Cir. 2005)).  The Third Circuit employs a two-prong analysis in determining whether a state actor violated the Constitution's guarantee of procedural due process.  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3rd Cir. 2000).  In order to state a facially plausible § 1983 claim for the deprivation of Fourteenth Amendment procedural due process rights, a complaint must allege that: "(1) [the plaintiff] was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [the plaintiff] did not provide 'due process of law.'"

*Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3rd Cir. 2006) *(quoting Alvin v. Suzuki*, 227 F.3d 107, 116 (3rd Cir. 2000)).

The procedural safeguards provided by the Fourteenth Amendment are applicable where, as here, a plaintiff is challenging the deprivation of the "security of interests that a person has already acquired in specific benefits." *Marin v McClincy*, 15 F. Supp. 3d 602 (W.D. Pa. 2014) (*quoting Bd. of Regents v. Roth*, 408 U.S. 564, 576, 92 S. Ct. 2701 (1972)). In order for a person to have a property interest in a benefit, he must have more than an abstract need, desire, or unilateral expectation of it. *Id.* at 577, 92 S. Ct. 2701. Rather, he must have a "legitimate claim of entitlement to it." *Id.* "Protected interests in property are normally not created by the Constitution. Rather they are created and their dimensions are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits." *Goss v. Lopez*, 419 U.S. 565, 573, 95 S. Ct. 729 (1975) (internal quotations omitted).[7]

There is no Pennsylvania case law or statute that expressly gives plaintiff a protected interest in a license to park an EV. However, there is a significant body of law holding that a license is a valuable property right which may not be suspended or revoked without due process, as was done here: **"[a] license, once obtained by compliance with law, becomes a valued**

---

[7] *See also Yu v. United States Dep't of Veterans Affairs*, 528 F. Appx. 181, 185-86 (3rd Cir. 2013). "'[T]he types of interests protected as property are varied and, as often as not, intangible, relating to the whole domain of social and economic fact.'" *Stana v. Sch. Dist. of the City of Pittsburgh*, 775 F.2d 122, 125-26 (3rd Cir. 1985) (*quoting Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982); *and citing Perri v. Aytch*, 724 F.2d 362, 364 (3rd Cir. 1983)). While property interests are often "'created expressly by state statute or regulation,'" *Hayes v. Pittsburgh Bd. of Pub. Educ.*, 279 F. App'x 108, 110 (3rd Cir. 2008) (*quoting Carter v. City of Philadelphia*, 989 F.2d 117, 120 (3rd Cir. 1993)), they may "also arise from written or unwritten state or local government policies." *Stana*, 775 F.2d at 126*; see also Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather[,] they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law… ").

**privilege or right in the nature of property, which may not be suspended or revoked without due process**." *Marin*, 15 F. Supp. 3d at 612 (emphasis added) (*quoting Balfour Beatty Const. Inc. v. Dep't of Transp.*, 783 A.2d 901, 908 (Pa. Commw. Ct. 2001)). The City's argument that the Complaint does not plausibly allege the deprivation of a constitutionally protected property interest flowing from the EV Program flies in the face of this established body of law.

Not only have Plaintiffs alleged a property interest in the exclusively reserved EV Spaces awarded to them, Plaintiff have also adequately alleged that the City has deprived them of that property interest. As noted above, and in the Complaint, the Plaintiffs obtained their exclusively-reserved EV parking spaces at great expense to themselves. Indeed, PPA regulations required Plaintiffs to acquire and register their EVs and install EV charging stations at their respective properties, all at their own expense, before their exclusively reserved EV Spaces would be so designated. They made these expenditures in reliance on the City's EV Program, including the mechanism it provided for the creation and retention of exclusively reserved EV Spaces. Once they obtained their spaces under Ordinance 12-1131, Plaintiffs and the rest of the class members could fully enjoy the fruits of their environmentally progressive investments, knowing that they could return to their homes after depleting the battery level of their EVs without fear that they would be unable to charge the vehicles. Instead, under the EV Program as amended, should Plaintiffs return to their home with a depleted EV during the daytime hours, there is no way for them to know whether they can charge their EV at the charging stations they each installed. Of course, without a charged battery the Plaintiffs' EVs are useless to them. Whether Plaintiffs are actually unable to re-charge as needed, or whether they curtail their use of their EVs out of the apprehension that they will be unable to charge their vehicles upon return to their home, either way the City has deprived them of a property interest.

In arguing for dismissal of the Plaintiffs' procedural due process claim, the City contends there can be no such claim challenging a legislative act, citing *Parker Ave. L.P. v. City of Philadelphia*, 175 F. Supp. 3d 457 (E.D. Pa. 2013). *Parker*, in turn, cited to *Bi-Metallic Investment Co. v. State Board of Equalization of Colorado*, 239 U.S. 441, 445 (1915). Relying on those cases, the City glibly suggests the solution available to persons aggrieved by a legislative action like the EV Program amendment would be to simply vote out the individuals who approved of the amendment. The City's argument betrays a misreading of *Bi-Metallic Investment*, disregards other relevant caselaw and simply misses the point.

The *Bi-Metallic Investment* Court's reasoning in distinguishing *Londoner v. Denver*, 210 U.S. 373, 28 S. Ct. 708 (1908), reveals that *Bi-Metallic Investment* actually supports the Plaintiffs' position. As described in *Bi-Metallic Investment*, *Londoner* held that procedural due process warranted a hearing where "a local board had to determine 'whether, in what amount, and upon whom' a tax for paving a street should be levied for special benefits. **A relatively small number of persons was concerned, who were exceptionally affected, in each case upon individual grounds**". *Bi-Metallic Investment* at 446, *quoting Londoner* at 385 (emphasis added). That is precisely the same situation as that presented by the Plaintiffs herein, as they constitute a relatively small number of persons (although a sufficiently large group to warrant class certification) who have been "exceptionally affected" by retroactive application of the EV Program amendment. They have thus stated a claim for violation of their rights to procedural due process, and are not denied judicial redress under *Parker*. *See also Mera v. Lohman,* 2002 WL 511561, *2, No. 3:CV-00-1507 (M.D. Pa. April 4, 2002) (procedural due process does not extend to legislative action "absent an indication that the legislative process treats an entire class of people inequitably", citing *Bi-Metallic Investment* at 445-46 and *Rogin v. Bensalem Twp.*, 616 F.2d 680, 693 (3rd Cir. 1980)).

11

Moreover, the City's suggestion that Plaintiffs redress is to simply exercise their right to vote is patently disingenuous. Although large enough to warrant class certification, the number of persons aggrieved by the EV Program amendment is not large enough to sway an election in a city of more than one million people, as only sixty-eight exclusively reserved spaces had been granted as of the time of the amendment that retroactively stripped the Plaintiffs of their approved spaces. While it may be true, as the City contends, that the amendment "affect[s] all City residents requesting an electric vehicle parking permit in the City" on a prospective basis, this is simply not the case retrospectively. Instead, **on a retroactive basis** it only impacted the three named Plaintiffs and the other sixty-five members of the putative class whose exclusively reserved spaces were stripped from them. *Plaintiffs are not challenging the amendment as applied prospectively to future applicants to whom an exclusively reserved EV Space had never been granted.*

### 2. Plaintiffs Have Stated a Claim For Violation Of Their Substantive Due Process Rights

The Due Process Clause of the Fourteenth Amendment also has a substantive element, which bars certain actions by the government regardless of the fairness of procedures in place to implement them. *Planned Parenthood of S. E Pa. v. Casey, 505 U.S. 833*, 846, 112 S. Ct. 2791 (1992). All of the fundamental rights encompassed in the term "liberty" are protected by the Constitution from invasion by the States. *Id.* at 847, 112 S. Ct. 2791. "Neither the Bill of Rights nor the specific practices of States at the time of the adoption of the Fourteenth Amendment marks the outer limits of the substantive sphere of liberty which the Fourteenth Amendment protects." *Id.* at 848, 112 S. Ct. 2791. A deprivation by state officials which does not offend procedural due process may still give rise to a substantive due process claim "upon allegations that the government deliberately and arbitrarily abused its powers." *Nicholas v. Pa. St. U.*, 227 F.3d 133, 139 (3rd Cir.

2000) (internal citation omitted). A property interest that falls under the protection of substantive due process may not be taken by the state for arbitrary, irrational, or improper reasons. *Id.*

In seeking dismissal of Plaintiffs' substantive due process claim, the City asserts that the EV Program amendments were the result of a "legislative act affecting anyone requesting an electric vehicle permit in the City of Philadelphia." City's Memorandum at 8. As such, the City argues that the legislative act does not implicate a fundamental right, and that the "EV Parking Ordinance must simply be rationally related to a legitimate government interest." *Id.*[8] Applying that test, the City articulates the legitimate government interest that purportedly justifies the ordinance as "the legitimate interest in providing more parking to residents of the City and limiting the number of parking spaces restricted by permitting on City streets." *Id.* at 8-9. While the City's characterization of the legality of the ordinance may be valid on a prospective basis, the City's argument again does not withstand scrutiny given the retroactive impact of the 2017 amendment on the Plaintiffs.

Legislation having a retroactive effect has long been disfavored, as recognized by several provisions of the United States Constitution, including the Ex Post Facto clause, the Contracts Clause, the Takings Clause, the prohibition against bills of attainder and the Due Process Clause.

---

[8] Plaintiffs take issue with the City's claim that no fundamental right has been implicated. To the contrary, ownership of real property is a fundamental right sufficient to warrant protection under the substantive component of due process. *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 600–601 (3rd Cir.1995), *overruled on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3rd Cir.2003). The amendment to the EV Program has operated to severely interfere with the Plaintiffs' "bundle of rights" with respect to ownership of their property. Specifically, in reliance on the City's EV Program, Plaintiffs have made substantial valuable improvements to their real property in the form of the charging stations and related infrastructure, which have also served to benefit the City. Once the EV Program amendment was enacted, however, Plaintiffs were deprived of the full value and benefit of the improvements to their property.

*Landgraf v. USI Film Products*, 114 S. Ct. 1483, 1497, 511 U.S. 244, 265-66 (1994). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. . . . In a free dynamic society, creativity in both commercial and artistic endeavors is fostered by a rule of law that gives people confidence about the legal consequences of their actions." *Id*. As the Supreme Court recognized in *Landgraf*, a legislative body's "unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration. Its responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals." *Id*. at 1497, 511 U.S. at 267. Most pertinent for purposes of the instant case, the *Landgraf* Court noted that "a justification sufficient to validate a statute's prospective application under the [Due Process] Clause 'may not suffice' to warrant its retroactive application." *Id*. at 1497, 511 U.S. at 266 (citation omitted). *See also Lewis v. Rendell*, 501 F. Supp. 2d 671, 689 (E.D. Pa. 2007) (retroactive aspects of legislation must satisfy due process separate and apart from the prospective aspects, and the justification for one may not suffice for the other).

It is important to remember that this case pertains to a mere sixty-eight parking spaces, distributed in various neighborhoods across one of the largest cities in the country. Even assuming, as the City contends, that the ordinance need only be "rationally related to a legitimate state interest", the City's articulation of the interest at stake is insufficient to pass even this deferential standard. Plaintiffs do not contest whether the City has a legitimate interest in "providing more parking to residents" and "limiting the number of parking spaces restricted by permitting on City streets." Indeed, both are legitimate objectives, and Plaintiffs have no quarrel with the EV ordinance as it applies moving forward. If the City has concerns regarding a potential future

14

proliferation of EV reserved parking spaces, it is certainly within its power to address that concern through legislative action. Armed with notice of the new legislative scheme and what it means for guaranteed access to charging stations, a City resident who has not yet purchased or leased an EV can decide whether it is prudent to make such an investment. However, the Plaintiffs, who made significant expenditures in reliance on their ability to qualify under the EV Program for an exclusively reserved parking space where they can charge their EV, stand in a far different position. The impact of the EV Program amendment is to strip Plaintiffs of their rights to those spaces retroactively. Given that the Plaintiffs' parking spaces at issue account for only sixty-eight of the parking spaces in the entire City of Philadelphia, it cannot be reasonably maintained that the amended ordinance – as applied to Plaintiffs – is rationally related to a legitimate state interest. To the contrary, as applied to the named Plaintiffs and the other members of the putative class, the amendment is an overly broad and disproportionately heavy-handed measure that only frees up sixty-eight parking spaces in various neighborhoods for twelve hours per day, while at the same time depriving Plaintiffs of their constitutional rights. This is hardly the type of rational relationship between the ordinance and a legitimate state interest that this Court should sanction.

Indeed, adding these sixty-eight parking spaces across the City to the inventory of available parking for twelve hours per day does not remotely move the needle towards achieving the City's stated justification for the EV Program amendment. If the City desired to take legislative action that is actually rationally related to the "legitimate interest in providing more parking to residents of the City and limiting the number of parking spaces restricted by permitting on City streets" it could take a number of steps other than to amend the EV Program. Why target these sixty-eight spaces, when the City apparently has taken no action to increase parking by curtailing handicapped parking spaces? Why not limit the spaces reserved for loading zones? Why not target the spaces

dedicated to for-profit car share services? Why not reduce the number of curb cuts that eliminate what would otherwise be a legal parking space? What about reducing the number of parking spaces lost to private driveways or to allow access to private garages? Surely any one of those initiatives would free up more than sixty-eight parking spaces across the City. The City's retroactive targeting of the Plaintiffs' EV parking spaces, and those of the rest of the putative class, is manifestly arbitrary, capricious and not rationally related to the legitimate interest of the City in managing available parking.

      **B.**    **Plaintiffs Have Stated a Claim for Violation of Their Rights to Equal Protection**

As the City notes, in analyzing an Equal Protection claim, the "first step is to examine whether the complaining party is similarly situated to other uses that are permitted. If the entities are similarly situated, then the City must justify its different treatment of the two under the rational basis test." City's Memorandum at 10, quoting *CMR D.N. Corp. v. City of Philadelphia*, 829 F. Supp. 2d 290, 303 (E.D. Pa. 2011), aff'd 703 F.3d 612 (3rd Cir. 2013). After that correct statement of the law, the City then presumes to define the "others similarly situated" as all EV owners in the City, and goes so far as to argue that Plaintiffs were actually treated *better* than the other EV owners, not worse. The City is mistaken.

"Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3rd Cir. 2008). Under that standard, there are stark differences between Plaintiffs and all other EV owners in Philadelphia which render the latter group the wrong population to use for purposes of Equal Protection analysis. One glaring difference is that, unlike Plaintiffs who acquired their EVs and incurred significant expense installing the chargers and related infrastructure at their property in reliance on the ability to obtain an exclusively reserved parking space for such EVs pursuant to the City's

16

former EV Program, none of the other EV owners can make the same claim. Another critical difference is that Plaintiffs are the only persons who are being harmed by the retroactive application of the amendment to the EV Program. Indeed, no other EV owner has been stripped of the exclusively reserved EV parking spaces that had previously been awarded to them.

Contrary to the City's assertion, and as alluded to above, the group of persons that are similarly situated in all relevant respects to Plaintiffs and the rest of the putative class are those persons or entities who are taking up parking spaces that would otherwise be available to the general public. This includes those with exclusively reserved handicapped parking spaces, those with exclusively reserved "loading zone" parking spaces, those for-profit car share companies (Zipcar, for example) currently enjoying exclusively reserved parking spaces and those persons or entities using an otherwise public parking space to afford access to their private driveways and garages. In amending the EV Program to retroactively strip Plaintiffs of their exclusively reserved parking spaces in the purported interest of increasing the availability of street parking, while leaving undisturbed all the other similarly situated persons described above, the City has failed the rational basis test.

### C.     Plaintiffs Have Adequately Stated a Claim for Unjust Enrichment

To state a claim for unjust under Pennsylvania law, a party must plead "(1) benefits conferred on defendants by plaintiffs; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Durst v. Milroy General Contracting*, 52 A.3d 357, 360 (Pa. Super. Ct. 2012); *Sovereign Bank v. BJ's Wholesale Club*, 533 F.3d 162, 180 (3d Cir. 2008) (same). "To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively

received a benefit that it would be unconscionable for her to retain." *Torchia on Behalf of Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. 1985) (internal quotations omitted); *Meehan v. Cheltenham Twp.*, A.2d 593, 595 (Pa. 1963) (holding a party "must demonstrate that appellee has in fact *been benefitted*") (emphasis added).

Here, the City has clearly benefited from the Plaintiffs' installation of EV chargers, and will continue to benefit if Plaintiffs' claims are not permitted to proceed. Plaintiffs - not the City - paid for the expansion of Philadelphia's EV infrastructure, and yet the City retains the benefit of the chargers, both in the form of the potential for an expanded EV charging network,[9] as well as increased publicity and good will relating to the EV Program. Councilperson Mark Squilla, in his own words, laid out the City's plans to expand the EV infrastructure in Philadelphia: "As the price of EV vehicles come down, we hope to promote the use of this in the future. So, we are working with PECO. And also, there's a big lawsuit with Volkswagen who has to put some of their money into electric vehicle charging. That's something tat [sic] we hopefully will be able to tap into to build an infrastructure here in Philadelphia to grow the EV opportunities in our City." *See* Transcript of City Council's Commission on Streets and Services held March 21, 2017, at pp. 33:22 – 34:7, attached as Exhibit A. Plaintiffs carried out the City's stated goal of expanding EV charging infrastructure beyond parking garages and the airport, and out into the neighborhoods, at no cost to the City, clearly enriching the City at Plaintiffs' expense.

As stated in the Complaint, the amendments to the EV Program confiscate the Plaintiffs' EV chargers for half of each day (rendering them useless to the owners) while allowing the City

---

[9] The City's contention in its Memorandum that the charging infrastructure that Plaintiffs have built is of no value, and would have to be demolished, rings hollow. Converting Plaintiff's chargers to a municipal system would require very little, if any, additional investment, and would save the City thousands of dollars.

to boast of its expanding EV infrastructure, essentially doing the City's work for it. The City's actions constitute a clear example of unjust enrichment, and the present motion should be denied.

## IV. CONCLUSION

The City of Philadelphia encouraged the Plaintiffs to spend thousands of dollars to stand at the forefront of technological and environmental activism and the original EV Program put Philadelphia far ahead of its peer cities in embracing EVs. The amendments to the EV Program, however, eviscerated it, depriving Plaintiffs of their constitutional rights to due process and equal protection, and appropriating the Plaintiffs' EV chargers for the City. For the reasons set forth herein, Plaintiffs respectfully request that the Court deny the City's Motion to Dismiss and allow their claims to proceed.

VINTAGE LAW LLC

/s/ Sean P. Whalen
Sean P. Whalen (PA Bar ID 200709)
Joseph C. Monahan (PA Bar ID 87173)
6 Coulter Avenue, Suite 1000
Ardmore, PA 19003
(484) 416-3207 (Whalen)
(484) 413-2319 (Monahan)
sw@vintage-law.com
jm@vintage-law.com

MATANOVIC LAW LLC
Stephan Matanovic (Pa. Bar ID 83459
399 Market Street
Suite 360
Philadelphia, PA 19106
(215) 915-7978
Ssmatanovic@matanoviclaw.com

*Attorneys for Plaintiffs*

Dated: December 1, 2017

# **CERTIFICATE OF SERVICE**

I, Sean P. Whalen, hereby affirm that on December 1, 2017, a copy of the Plaintiffs' Memorandum in Opposition to the City of Philadelphia's Motion to Dismiss and proposed form of Order were served via the Court's ECF electronic filing system on the following:

Eleanor N. Ewing
Chief Deputy City Solicitor
Benjamin N. Field
Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
Eleanor.ewing@phila.gov
Benjamin.field@phila.gov
*Counsel for Defendant City of Philadelphia*

/s/ Sean P. Whalen

Dated: December 1, 2017