IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM MORLOK, ADAM NOVICK, THEODORE LEWIS, individually and on behalf of all others similarly situated, : Plaintiffs | : : : : | CIVIL ACTION 17-4213 |
| vs. | : : | |
| CITY OF PHILADLEPHIA, Defendant | : : : | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT CITY OF PHILADELPHIA'S MOTION TO DISMISS COMPLAINT PURSUANT TO F.R. CIV. P. 12(b)(6)**

Defendant, the City of Philadelphia (the "City"), by and through undersigned counsel, hereby files this Reply Brief in support of its Motion to Dismiss the Complaint for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs are unhappy with the Amendment to the EV Parking Ordinance in part because they believe they have an exclusive right to the parking spaces at issue. This is clear from both their Complaint. (Docket No. 1) and their Response to the Motion to Dismiss (Docket No. 13, the "Response"). Unhappiness, however, is legally insufficient to allow a case to move forward. Plaintiffs must have plausible legal arguments and have pleaded facts to support those arguments. In their Response, instead of acknowledging the limitations of their action, Plaintiffs attempt to introduce new arguments and exaggerate the pleaded facts in the hopes of escaping dismissal. These new arguments are unavailing and their newly referenced facts insufficient or speculative. Defendant's Motion to Dismiss should be granted.

1

**I.     THERE IS NO BILL OF ATTAINDER OR RETROACTIVE PUNISHMENT IN THIS CASE.**

**a.  The Amended EV Parking Ordinance is not a Bill of Attainder.**

Plaintiffs argue that the amended ordinance amounts to a bill of attainder because the application of the amended ordinance retroactively targets Plaintiffs. (Response at 3). As a matter of law, there is no bill of attainder or retroactive punishment here. A bill of attainder is a law that "legislatively determines guilt and inflicts punishment upon an identifiable individual without provisions of the protections of a judicial trial." *Nixon v. Administrator of General Services,* 433 U.S. 452, 468 (1977). Bills of attainder have expressly been prohibited by the United States Constitution:

> In forbidding bills of attainder, the draftsmen of the Constitution sought to prohibit the ancient practice of Parliament in England of punishing without trial specifically designated persons or groups. Historically, bills of attainder generally named the persons to be punished. However, the singling out of an individual for legislatively prescribed punishment constitutes an attainder whether the individual is called by name or described in terms of conduct which, because of past conduct, operated only as a designation of particular persons.

*Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841, 847 (1984).

Plaintiffs' attempt to analogize the amended ordinance to a bill of attainder is nonsensical. The amended ordinance passed by City Council does not punish Plaintiffs, either by name or by specific characteristics for conduct they performed in the past. There is no set of facts in the Complaint (or conceivable, for that matter) that can lead to this conclusion. Plaintiffs argue that "the amended ordinance retroactively stripped Plaintiffs of the exclusively reserved EV spaces to which they are entitled and which have already been granted to them." (Response at 3). But putting aside for the moment their claim of "entitlement" on the basis of holding an annual discretionary permit, even this cannot amount to a bill of attainder. Nothing in the

Complaint indicates that Plaintiffs were singled out in the amended ordinance. Nothing in the Complaint indicates that the amended ordinance targets past actions of Plaintiffs, and nothing in the Complaint indicates that Plaintiffs were punished in any way.[1]

Just because Plaintiffs do not like the new requirements of the ordinance does not transform them into a bill of attainder. The Supreme Court in *Nixon* summed up the error at the heart of Plaintiffs' argument perfectly:

> By arguing that an individual or defined group is attained whenever he or it is compelled to bear burden which the individual or group disliked, [a party] removes the anchor that tied the bill of attainder guarantee to realistic conceptions of classification and punishment. [This] view would cripple the very process of legislating, for any individual or group that is made the subject of adverse legislation can complain that the lawmakers could and should have defined the relevant affected class at a greater level of generality…In short, while the Bill of Attainder Clause serves an important bulwark against tyranny, it does not do so by limiting Congress to the choice of legislating for the universe, or legislating only benefits, or not legislating at all.

(*Nixon* 433U.S. at 470-471). The Amended Ordinance is just what it purports to be, *i.e*., an act of municipal legislation. As a matter of law, it is NOT a bill of attainder.

---

[1] One of the keystones of a bill of attainder is the punishment. *Garner et. al. v. Board of Public Works of City of Los Angeles, et. al,* 341 U.S. 716, 722 (1951). Plaintiffs use *Garner* to argue that curtailing their use of a privilege they previously enjoyed is a punishment. (Response at 6, n.6). Historically, punishment arising from bills of attainder included death, imprisonment, banishment or punitive confiscation of property. *Nixon* 433 U.S. at 473-4. More recently punishment in this context has required analysis of more creative actions. ("Our treatment of the scope of the [bill of attainder] Clause has never precluded the possibility that new burdens and deprivations might be legislatively fashioned that are inconsistent with the bill of attainder guarantee. The Court, therefore…has applied a functional test regarding punishment, analyzing whether the law under challenge, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes.") (*Id.* at 475-476). Further, punishment can be determined by the motivation of the legislative body when enacting the legislation. So long as the legislation was not motivated by an intent to punish, or impose a penalty on the affected individuals, no punishment can be found. (*Nixon* at 478). Here Plaintiffs have not set forth any facts that would indicate that the amended ordinance punished them in any way or was motivated with punitive purposes in mind.

### b. Nor Is It Retroactive Legislation.

Plaintiffs also argue that the amended ordinance acts to "strip Plaintiffs of their rights to [their exclusively reserved parking spaces] retroactively."[2] (Response at 15). There is no support for this position. "An act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events which occurred prior to that date. A statute is not retroactive because a part of the requisites for its action is drawn from a time antecedent to its enactment." *City of Philadelphia to Use of Polselli v. Phillips*, 116 A.2d 243, 247 (Pa. Super. 1955). That the amended ordinance may, in part, modify the privileges and obligations that current EV permit holders may have going forward, simply is not retroactive application. The amended ordinance can rely on the actions EV permit holders took in the past (applying for, and being granted parking permits) to require different actions, based on that approval, in the future. Further, the ordinance at issue could not be applied retroactively even if the City wanted to, and Plaintiffs have plead no facts that could reach this conclusion. The privilege represented by the original EV ordinance was given to Plaintiffs at the time they were approved for their spaces, and upon each yearly renewal. How, now, could a legislative change to that privilege be applied retroactively? The City cannot go back and ticket or tow EV cars for parking in the permitted spaces for times before the amendment was passed. There is no retroactivity involved.[3]

---

[2] This is not the first nor the only allegation by Plaintiffs that they possessed exclusively reserved parking spaces. In fact, their Response is replete with facts not included in their complaint as well as hyperbole. For instance, Plaintiffs repeatedly allege that they have an "exclusively reserved" parking space. (Response at 2, 3, 5, 6, 10, 12, 15-17). Plaintiffs even go so far to assert that the parking spaces are they own. "Once they obtained *their* spaces…" (Response at 10). The ordinance, however, did not grant an y exclusive right but instead allowed *any* EV to park in the reserved space at any time. (Complaint ¶16).

[3] Plaintiffs' other argument, which relates to their substantive due process claim, also fails because Plaintiffs misunderstand the requirements of substantive due process. Plaintiffs argue that they have a "fundamental right" related to the "full value and benefit" of the use of their chargers and thus are entitled to substantive due process protection. Under a substantive due process analysis of a challenge to a legislative action, however, the only requirement is that it be "rationally related to a legitimate government purpose." *Nicholas v. Pennsylvania State*

## II. THERE IS NO PROTECTABLE PROPERTY INTEREST IN AN ALREADY NON-EXCLUSIVE ELECTRIC VEHICLE PARKING SPACE ON A CITY STREET.

While Plaintiffs attempt to resurrect their due process arguments by asserting a property interest in a public parking space on a City street, as explained in the City's Motion to Dismiss and in further detail below, this property interest does not exist.

### a. Plaintiffs' Procedural Due Process Has Not Been Violated.

Plaintiffs describe the EV parking permits as "licenses to park" EV's. Plaintiffs then assert that they have a protectible property interest in these "licenses" for purposes of procedural due process. The EV parking permits are discretionary annual permits, not licenses such as those involved in the cases cited by Plaintiffs. In *Marin v. McClincy,* 15 F. Supp. 3d 602 (W.D. Pa. 2014) and *Balfour Beatty Cost. Inc. v. Dep't of Trans.,* 783 A.2d 901 (Pa. Commw. Ct. 2001), the licenses in question involved employment qualifications. (*Marin* related to an Emergency Management Services certification, and *Balfour* to a construction contractor's status as a prequalified contractor). While such licenses related to livelihood can trigger procedural due process protections, what Plaintiffs euphemistically style a "license to park" here does not.

The privilege of parking on a city street is hardly equivalent to the right to seek or maintain employment. The Supreme Court of Pennsylvania addressed a similar issue in *Pennsylvania Game Comm'n v. Marich*, 542 Pa. 226, 231 (1995), after the state gaming commission revoked hunting licenses of two individuals who violated the allowable limits for waterfowl. The hunters challenged the revocations, which were upheld after a hearing. The hunters appealed, and the Pennsylvania Gaming Commission argued that the hunters were not

---

*Univ.,* 227 F.3d 133, 142 (3d Cir. 2000).  Here, the ordinance is rationally related to legitimate government interest. The City has not violated Plaintiffs' substantive due process rights.

entitled to a due process hearing (that they erroneously received) regarding the revocation of their hunting licenses. The Supreme Court agreed, reasoning:

> We acknowledge that the requirements of due process are not limited to the revocation of professional licenses. A driver's license also cannot be revoked without the procedural due process required by the Fourteenth Amendment. However, we find that an individual's interest in driving an automobile far exceeds the interest involved in the sport of hunting. One cannot assume that every type of license administered by the state is afforded the same constitutional protections."

*Id.* at 233. Here, a "license" to park is much more analogous to a hunting license then it is to a license required for employment or to drive. A person's interest in access to a parking space is hardly analogous to a license to practice a profession, or even to drive.[4] In sum, Plaintiffs assert no protectable property interest to which procedural due process applies.

Even were that not the case, "the fundamental requisite of due process of law is the opportunity to be heard." *Goldberg v. Kelly,* 397 U.S. 254, 267 (1970) (internal citations omitted). In the context of the legislation (such as this ordinance) due process if satisfied when the legislative process eliminating a benefit is followed appropriately. Thus, in *Atkins v. Parker*, 472 U.S. 115 (1985), the Supreme Court found no violation of due process relating to a reduction in food-stamp benefits, holding that legislative process *is* the due process individuals are entitled to when a law is changed, even to their detriment. "The procedural component of the Due Process Clause does not impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits…[A] welfare recipient is not deprived of due process when the legislature adjusts benefit levels... [T]he legislative determination provides all the process that is due." *Id.* at 130.

---

[4] Further, Plaintiffs' argument that they now cannot charge their vehicles, is unavailing. The original ordinance allowed any EV access to the permitted parking space. Therefore, even before the amendment Plaintiffs could arrive home to find another EV legally parked in the permitted parking space, thus creating the same issue with Plaintiffs ability to charge their vehicles.

The process that the City undertook to amend the ordinance provided the procedural due process required. When Plaintiffs signed up for the EV program there was no guarantee that the permit would be granted indefinitely. There was always a possibility that this ordinance could be rescinded or modified.[5] When the ordinance was amended, the legislative process itself provided the notice required under procedural due process. As the Supreme Court concluded in *Atkin*, "[t]he entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny." Just because Plaintiffs do not like the outcome of the process does not mean the process was not followed.[6]

### III. PLAINTIFFS HAVE NOT ARTICULATED A CLAIM FOR EQUAL PROTECTION.

Plaintiffs argue that the City has not chosen the correct "similarly situated" individuals as a comparator group. (Response at 16). As a threshold matter, the City is not required to guess who these individuals are; Plaintiffs are required to plead them. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face…[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). Plaintiffs' Equal Protection Count is a mere four paragraphs which contain no factual allegations, only the legal elements of equal protection.

---

[5] To the extent that Plaintiffs argue that they "relied" on the continuation of the spaces or the extra access to their chargers, their reliance was not reasonable. Ordinances are not granted in perpetuity, and can be changed through the proper legislative process.

[6] Plaintiffs rely on *Londoner*, which is inapposite. *Londoner* related to the City of Denver's failure to provide a required hearing to a small number of individuals who were to be levied taxes for improvements to property adjacent to them. The right to a hearing was a stated prerequisite to levying such taxes. The City of Denver failed to follow their own procedures and did not provide a hearing for those individuals specifically affected.

Plaintiffs cannot now argue new facts. "In reviewing a motion to dismiss, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Dorsey v. Pennsylvania Dep't of Corr.,* No. 1:16-CV-588, 2016 WL 6124420, at *2 (M.D. Pa. Oct. 20, 2016). Plaintiff provided no information in the Complaint or appropriate documents to identify who they claim are similarly situated individuals and therefore this count should be dismissed.[7]

## IV.    DEFENDANTS HAVE NOT RECEIVED ANY BENEFIT FROM PLAINTIFFS

Plaintiffs' response attempts to articulate what benefits they perceive that the City has received from them. They contended the benefits are "both in the form of the potential for an expanded EV charging network, as well as increased publicity and good will relating to the EV program." (Response at 18). This fails to state a claim.

"Unjust enrichment in Pennsylvania does not allow for speculative nor intangible benefits." *Feather v. United Mine Workers of America.*, 711 F.2d 530, 541 (3d Cir. 1983). (*See generally Victaulic Co. v. Tieman,* 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly,* 550 U.S. at 555) (noting that to survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level...."). Here, Plaintiffs plead nothing but the type of intangible, speculative "benefit" that, if accepted, could be adapted to subject a government to

---

[7] Plaintiffs' response belatedly claims that they are not similarly situated to other EV owners, but instead to others holding any type of privilege related to parking spaces, such as handicapped parking. But Plaintiffs offer no particulars as to the breath and scope of the parking "privileges" of these other, vaguely described groups which could permit any analysis of whether they had anything in common with Plaintiffs, much less are sufficiently "similarly situated." And nonetheless, any action towards EV owners would still only warrant a rational basis analysis.

suit for changing any piece of legislation.  Not surprisingly, Plaintiffs offer no caselaw to support claiming this type of "benefit" as the basis of an unjust enrichment claim.

Plaintiffs also speculate that at some future date, the City "might" want to purchase Plaintiffs' chargers so that EVs other than Plaintiffs' could make use of them.  Imagining some possible future benefit is not the type of present, tangible benefit necessary to support unjust enrichment.

## V. CONCLUSION

For all the reasons discussed herein and in its pending Motion to Dismiss Plaintiffs' Complaint, the City respectfully requests that its motion to dismiss be granted and that Plaintiffs' Complaint be dismissed.

Respectfully submitted,

Date:  December 8, 2017            /s/ Amy M Kirby

Eleanor N. Ewing, Chief Deputy City Solicitor
Benjamin H. Field, Deputy City Solicitor
Amy M. Kirby, Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
(215) 683-5012

## CERTIFICATE OF SERVICE

I hereby certify that, on the date set forth below, I served a true and correct copy of the foregoing Reply Brief in Support of Defendants Motion to Dismiss, sent automatically by CM/ECF on the following counsel who are registered as CM/ECF filing users and have consented to accepting electronic service through CM/ECF:

Sean P. Whalen, (PA Bar ID 200709)
Joseph C. Monahan, (PA Bar ID 87173)
VINTAGE LAW LLC
6 Coulter Avenue, Suite 1000
Ardmore, PA 19003

Stephan Matanovic (PA Bar ID 83459)
MATANOVIC LAW LLC
399 Market Street, Suite 360
Philadelphia, PA 19106

Counsel for Plaintiffs
Morlok et al

                                              BY:   /s/ Amy Kirby
                                                              Deputy City Solicitor

Dated:  December 8, 2017