# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MORLOK, et al., | CIVIL ACTION |
|---|---|
| v. | NO. 17-4213 |
| CITY OF PHILADELPHIA | |

## MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**                                                  April 27, 2018

In this case, Plaintiffs William Morlok, Adam Novick, and Theodore Lewis allege that Defendant City of Philadelphia violated their federal constitutional rights when it amended a statutory scheme under which parking spaces were reserved exclusively for use by electric vehicles by making them available for use by any vehicle for twelve hours per day. Plaintiffs, who seek to represent a putative class of individuals who applied and were granted approval for the designation of these reserved parking spaces next to electric vehicle chargers they had paid to install near their homes, bring due process, equal protection, and unjust enrichment claims against the City. Presently before the Court is a Motion to Dismiss all three Counts of the Complaint for failure to state a claim for which relief can be granted, filed by the City. For the reasons discussed below, Defendants' motion is granted in full.

## I. Factual and Procedural History

Taking Plaintiffs' allegations as true, the factual background is as follows. Plaintiffs William Morlok, Adam Novick, and Theodore Lewis are all adults who reside within the city limits of Philadelphia, Pennsylvania. (ECF No. 1, Complaint. ¶¶ 4-6.) On or about November 1, 2007, the City Council of the City of Philadelphia enacted Section 12-1131 of the Philadelphia Code, entitled "Electric Vehicle Parking." (Id. ¶16.) Section 12-1131 provided for the Philadelphia Parking Authority to designate reserved on-street parking for electric vehicles, upon an investigation confirming such a need. (Id.) It laid out a process for applications for these

1

reserved parking spaces which were to be "for the exclusive use of electric vehicles." (Id.) It specified that applicants must provide proof that an electric vehicle is owned or leased by an individual who resides at the address where the reserved parking space is sought; proof that the owner of the property, if not the applicant, consents to the application; and proof of approval from the Pennsylvania Department of Transportation for the installation of an electric vehicle charger at the curb next to the parking space. (Id.) Approval of applications was left to the discretion of the City. (Id. ¶ 17.) Once an application was granted the Streets Department was required under the legislation to put up signage around the parking space indicating that it was reserved exclusively for electric vehicles. (Id. ¶ 18.)

Following the enactment of Section 12-1131 Plaintiffs each applied to the Philadelphia Parking Authority for designated electric vehicle parking spaces. (Compl. ¶ 20.) Plaintiffs each took several actions leading up to making those applications, paid all fees associated with the applications, and submitted all required materials for the applications. (Id. ¶¶ 19-20.) Each Plaintiff additionally paid for and arranged the installation of an electric vehicle charger on the curb adjacent to the area he or she had submitted for a reserved electric vehicle parking space. (Id. ¶ 21.) The applications submitted by Plaintiffs and members of the Putative Class were approved by the PPA.[1] (Id. ¶ 23.)

On or about April 6, 2017, the City Council passed Bill Number 170093-A, which amended Section 12-1131 so that the signs designating the parking spaces would only reserve them for electric vehicles from 6:00 p.m. to 6:00 a.m. each day, rather than reserving them exclusively for electric vehicles at all hours. (Compl. ¶ 24.) The amendment further added that the signs would indicate that non-electric vehicles were permitted to park in these spaces for up

---

[1] In total, the City approved sixty-eight electric vehicle reserved parking spaces under Section 12-1131, as set forth in Plaintiffs' Brief in Response to Defendant's Motion to Dismiss at page 2, and as confirmed by the parties at oral argument on March 28, 2018.

to two hours at a time during the hours from 6:00 a.m. to 6:00 p.m. (Id.) The amendment became law on April 20, 2017, despite Mayor James Kenney having expressed his disagreement with it and declining to sign it. (Id. ¶ 25.) Under the amended version of Section 12-1131, from 6:00 a.m. to 6:00 p.m. every day non-electric vehicles are permitted to occupy the parking spaces that under the original version of the legislation were reserved exclusively for electric vehicles. (Id. ¶ 26.)

On September 20, 2017 the Plaintiffs filed a Complaint in the Eastern District of Pennsylvania. (ECF No. 1.) The Complaint states three claims on behalf of Plaintiffs and the putative class:

1. Violation of 42 U.S.C. § 1983 for interfering with Plaintiffs' property interest in the reserved electric vehicle parking spaces and access to the adjacent charging stations, without due process;

2. Violation of 42 U.S.C. § 1983 for violating Plaintiffs' equal protection rights;

3. Plaintiffs assert that they have made substantial improvements on public property that the City has subsequently denied them the full benefit of, and that it would unjustly enrich the City to allow it to retain the benefits conferred on it by Plaintiffs.

Defendant filed a Motion to dismiss (ECF No. 9), Plaintiffs responded (ECF No. 13) and the City replied (ECF No. 14).

The Court held oral argument on March 28, 2018 on the Motion to Dismiss and encouraged the parties to discuss a possible resolution to this case for the benefit of both parties. After the parties conferred they informed the Court that there will be no such resolution.

## II. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential–Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests.") (citing Twombly, 550 U.S. at 556 n.3). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

### III. Discussion

#### A. Parties' Contentions

The City contends that the Plaintiffs have no "protectable property interest" in the electric vehicle parking spaces, as they were not granted an exclusive right to use the spaces as compared with any other electric vehicle operator, and thus they have no due process claim. (Def.'s Motion to Dismiss at 7.) The City argues that Plaintiffs' due process claim, if substantive, fails because they have no fundamental right at stake, and the amended law survives the rational relationship requirement. (Id. at 8.) Additionally, the City argues that Plaintiffs' due process claim, if procedural, fails because procedural due process rights are not implicated by legislative

4

action.  (Id. at 9.)  Even if the change to the law did implicate procedural due process, they add, the statutory amendment process fulfilled the requirements thereof.  (Def.'s Reply Br. at 6-7.)

Plaintiffs argue that they have properly alleged a protected property interest entitled to due process, specifically, the license to park in the electric vehicle designated spaces.  (Pls.' Br. in Opposition to Def. Mot. to Dismiss at 9-10.)  Further, they argue that they have properly plead that the City has deprived them of that property interest without procedural due process, in that they obtained the reserved spaces at great expense to themselves and the City has since curtailed their ability to use the spaces without giving the Plaintiffs an opportunity to be heard.  (Id. at 10-11.)  Plaintiffs emphasize the retroactive impact of the amendment to 12-1131 in arguing that it violated their substantive due process interest in the parking spaces without sufficient justification.  (Id. at 13-16.)

The City argues that Plaintiffs' Equal Protection claim cannot proceed because Plaintiffs have not alleged facts which would establish that they were treated differently than any similarly situated entity—be it all other electric vehicle owners with reserved parking spaces or all other electric vehicle owners generally—and that even if they could, the alleged facts demonstrate that the City had a legitimate interest in amending the statute.  (Def.'s Mot. at 10-11.)

Plaintiffs argue that the City misidentifies the "similarly situated" group for purposes of the equal protection claim analysis.  (Pls. Br. at 17.)  The appropriate group, Plaintiffs suggest, is those persons who are taking up parking spaces that would otherwise be available to the general public (e.g. individuals who have secured loading zones, access to private driveways, or handicap parking spots), and Plaintiffs argue that the amendment cannot survive the rational basis test.  (Id.)

The City argues that Plaintiffs' unjust enrichment claim fails as a matter of law because

5

they cannot prove any benefit conferred on the City. (Def.'s Mot. at 12-13.) Plaintiffs respond that the City has been benefitted by the Plaintiffs' installation of the electric vehicle charging stations in the potential to integrate the charges into an expanded charging network, and in the publicity associated with the City endorsing electric vehicle use. (Pls. Br. at 18.)

The Court will take each of Defendant's arguments in turn.

### B. Analysis

#### i. Due Process Claim

In order to establish liability under 42 U.S.C. § 1983, "a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005). Plaintiffs allege both that the City violated their procedural and their substantive due process rights. We will review these claims in turn.

#### 1. Procedural Due Process

A plaintiff must establish two things in order to make out a procedural due process claim: "(1) he was deprived of an individual interest within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Biliski v. Red Clay Consol. School Dist Bd. Of Educ., 574 F.3d 214 (3d Cir. 2009). "Property interests are not generally created by the Constitution. 'Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d Cir. 1984) (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)). "'The types of interests protected as 'property' are varied and, as often as not, intangible, relating

6

to the whole domain of social and economic fact.'" Baraka v. McGreevey, 481 F.3d 187, 205 (3d Cir. 2007) (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982)).

Section 12-1131 of course constitutes an "independent source such as state law" that could conceivably "create" a protected property interest under the due process clause. Indeed, Section 12-1131 provided that the parking spaces approved under that scheme would be exclusively reserved to the use of electric vehicles for twenty-four hours a day, every day. It decreed that signs would be erected to announce that rule, and that the rule would be enforced. The City protests that Plaintiffs could not have had a protected interest in these parking spaces because the spaces were reserved generally for all electric vehicle drivers, rather than specifically for use by Plaintiffs alone. Nevertheless, it seems only fair to conclude that the applicants for these parking spaces had an "understanding" that this statute secured to them the benefit of these spaces being reserved for electric vehicles at all hours of the day. Indeed it was not a benefit designed for the private enjoyment of any particular electric vehicle owner, however the benefit of having these spaces limited to electric vehicles is something that each of the Plaintiffs certainly enjoyed, knowing that a limited number of cars would be competing for these spaces at any given time throughout the day. Plaintiffs personally applied for these parking spaces to be approved near their residences, and personally covered the costs associated with the applications as well as the installation of electric vehicle charging stations adjacent to the spaces. The general scheme set out in Section 12-1131 appears to support Plaintiffs' claim of entitlement to the benefits associated with the exclusive reservation of these spaces to electric vehicles, twenty-four hours per day.

Though Plaintiffs have likely stated a protectable property interest entitled to due process, they have not sufficiently alleged facts to support their theory that the City denied them due

process in interfering with that interest. In Atkins v. Parker the Supreme Court explained, in the context of "a legislatively mandated substantive change in the scope of [an] entire [food-stamp benefits] program," that property rights bestowed on individuals as a result of statutory schemes "d[o] not include any right to the maintenance of the same level of property entitlement" in the absence of any stated guarantee to that effect. Atkins v. Parker, 472 U.S. 115, 129 (1985). To the contrary, legislative bodies are permitted to define and later redefine the contours of individual benefits over time in response to the changing resources and needs of the broader citizenry, so long as those changes "comply with the substantive limitations on the power of [the legislature]." Id.

Plaintiffs' property interest in having the relevant parking spaces exclusively reserved to electric vehicles twenty-four hours per day is similar to the property interest in welfare or other benefits, in that it is an entitlement secured by statute. On the one hand, it is arguably not as strong of an individual interest, given that Plaintiffs never had individual spaces exclusively reserved for their personal use alone; however on the other hand, Plaintiffs did personally incur costs to gain the benefit of having the parking spaces designated, which could suggest a strong interest.

Generally speaking, the interests are similar enough that the logic from Atkins must apply to the situation at hand. Plaintiffs' entitlement under Section 12-1131 to the benefit of having the parking spaces exclusively reserved to electric vehicles at all hours of the day did not ensure an indefinite right to enjoy that benefit. Rather, the Philadelphia City Council was permitted to adjust the level of that benefit, in accordance with required legislative procedure for making such changes. Here, as in Atkins, "[b]ecause the substantive reduction in the level of petitioners' benefits was the direct consequence of the statutory amendment, they have no basis for

challenging the procedure that caused them to receive a different, less valuable property interest after the amendment became effective." Atkins, 472 U.S. at 130. Under this test, Plaintiffs have not properly stated a procedural due process violation.

### 2. Substantive Due Process Claim

The Fourteenth Amendment due process clause not only ensures the adequacy of state procedures, it has a substantive element as well. As the Third Circuit has explained, "the fabric of substantive due process…encompasses at least two very different threads." Nicholas v. Pennsylvania State University, 227 F.3d 133, 139 (3d Cir. 2000). "The first thread of substantive due process applies when a plaintiff challenges the validity of a legislative act," while "[t]he second thread…protects against certain types of non-legislative state action." Id. (emphasis in original). The Third Circuit explained the distinction between legislative versus non-legislative state actions, also known as executive acts: "executive acts, such as employment decisions, typically apply to one person or to a limited number of persons, while legislative acts, generally laws and broad executive regulations, apply to large segments of society." Nicholas, 227 F.3d at 139 n. 1 (quoting Homar v. Gilbert, 89 F.3d 1009, 1027 (3d Cir. 1996)).

Here we are concerned with the amendment to Section 12-1131, a legislative act. The amendment is a broadly applicable change to the law that impacts the public at large, by changing the hours during which any particular person, whether a driver of an electric vehicle or a non-electric vehicle, can park in the spaces reserved under Section 12-1131. Thus, we evaluate it under the substantive due process framework for legislative acts. In order for a legislative act to survive a substantive due process challenge, the government must demonstrate "(1) the existence of a legitimate state interest that (2) could be rationally furthered by the statute." American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff, 669 F.3d 359, 366 (3d Cir.

2012) (citing Nicholas, 227 F.3d at 139). "[U]nder rational basis scrutiny, a court's inquiry is limited to whether the law 'rationally furthers any legitimate state objective…the court may even hypothesize the motivations of the state legislature to find a legitimate objective promoted by the provision under attack.'" American Exp. Travel Related Services, Inc., 669 F.3d at 367 (quoting Malmed v. Thornburgh, 621 F.2d 565, 569 (3d Cir. 1980)).

The amendment to Section 12-1131 clearly passes this bar. In their Motion to Dismiss, the City identifies its "legitimate interest in providing more parking to residents of the City and limiting the number of parking spaces restricted by permitting on City streets," and explains that "[b]y limiting the hours that electric vehicles can park in designated parking spaces, the City is addressing these interests." (Def.'s Mot. at 8-9.) Increasing available street parking is only one of several legitimate objectives that the City could conceivably have had in amending Section 12-1131 to limit the electric vehicle reserved parking to twelve hours per day. Plaintiffs' suggestion that the amendment had a retroactive impact on their rights is unavailing. As the City points out, the modification of privileges that Plaintiffs enjoy under Section 12-1131 does not constitute a retroactive application of law to Plaintiffs' rights. Rather, it is simply a change in the law that will dictate the rules regarding the parking spaces moving forward. While Plaintiffs point out several other actions the City could have taken in order to achieve the stated goal of increasing the number of parking spaces available to the general public, the existence of these alternatives in no way undermines the rationality of the City's choice to pursue its aim in the particular way that it did, by amending Section 12-1131. Plaintiffs have not stated a claim that the amendment to Section 12-1131 violated their substantive due process rights.

Count I will be dismissed, without prejudice, with leave to amend.

### ii. Equal Protection Claim

To bring a successful § 1983 claim for the denial of equal protection, "a plaintiff must prove the existence of purposeful discrimination by demonstrating that, based on membership in a protected class, he or she received 'different treatment from that received by other individuals similarly situated.'" Kazar v. Slipper Rock University of Pennsylvania, 679 Fed.Appx. 156, 162 (3d Cir. 2017) (quoting Kennan v. City of Philadelphia, 983 F.2d 459 (3d Cir. 1992)). "Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects." Startzell v. City of Philadelphia, 533 F.3d 183 (3d Cir. 2008) (internal quotation omitted). Plaintiffs argue that the relevant group that is "similarly situated" to them is the group of persons or entities who are taking up parking spaces that would otherwise be available to the general public. (Pls.' Br. at 17.) The City, on the other hand, suggests that the relevant group is all electric vehicle owners. (Def.'s Mot. at 11.) Plaintiffs' Complaint is not sufficiently specific to conclude, as they argue in their brief, that all other persons taking up parking spaces that would otherwise be available to the general public, are in fact similarly situated to them. From the facts alleged it appears that the relevant group is all electric vehicle owners in Philadelphia who seek to take advantage of the parking spaces reserved for electric vehicles under Section 12-1131. While only the individuals who applied for the spaces to be reserved can actually make use of the electric vehicle chargers installed next to these parking spaces, the spaces benefit all electric vehicle drivers who rely on street parking. Importantly, Section 12-1131 never created a private right for Plaintiffs to alone enjoy the use of these parking spaces, rather, they always remained open to use by any electric vehicle driver.

In order to evaluate Plaintiffs' claim, this Court "must [also] determine the appropriate standard by which we are to review the claim." Doe v. Pennsylvania Bd. of Probation and

Parole, 513 F.3d 95, 107 (3d Cir. 2008). Because the amendment to Section 12-1131 "does not burden a fundamental Constitutional right or target a suspect class" it is subject to rational basis review. Id. As such, "the challenged classification must be upheld 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Id. (quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993)). "[T]he inquiry is 'whether the difference in treatment rationally furthers a legitimate state interest.'" U.S. v. Pollard, 326 F.3d 397 (3d Cir. 2003) (quoting Nordlinger v. Hahn, 505 U.S. 1, 12 (1992)).

The amendment to Section 12-1131 survives rational basis scrutiny. The alleged differential treatment essentially boils down to the fact that Plaintiffs contributed to the process of choosing the particular locations for the electric vehicle parking spaces, based on their actions of installing the chargers and applying for the designations, where other electric vehicle owners in Philadelphia are no longer permitted to engage in this process following the amendment to Section 12-1131, which cut off the addition of new parking spaces under the program. This is not even a detriment to Plaintiffs at all. In any case, the City's legitimate interest in creating more parking for the general public is furthered by this change.

Plaintiffs will have the opportunity to amend their Complaint to add factual detail alleging that the appropriate group of similarly situated persons is those who are taking up parking spaces that would otherwise be available to the general public, or any alternative equal protection theory they wish to put forward. Count II will be dismissed without prejudice, with leave to amend.

### iii. Unjust Enrichment

The elements of an unjust enrichment claim under Pennsylvania law are as follows: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and

12

(3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162 (3d Cir. 2008) (quoting Limbach Co. LLC v. City of Philadelphia, 905 A.3d 567, 575 (Pa. Cmwlth. 2006)). "The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." EBC, Inc. v. Clark Bldg. Systems, Inc., 618 F.3d 253, 273 (3d Cir. 2010) (quoting AmeriPrio Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super Ct. 2001)). Rather, a Plaintiff "must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for her to retain." EBC, Inc., 618 F.3d at 273 (quoting Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008)).

Plaintiffs have properly alleged a benefit conferred on the City by them, specifically the installation of electric vehicle charging stations on public property next to city streets. One potential benefit to the City is the development of infrastructure to enable the use of electric vehicles within the City. The usefulness to the City of the chargers installed by Plaintiffs is somewhat in question, in light of the fact that the charging stations are accessible only by the homeowners who installed them, and are connected to those homeowners' electric meters. It appears likely that the City could alter this arrangement in order to make the charging stations publicly available, and to disconnect them from residential electricity sources, even though it is not absolutely clear that this could be done. In any case, Plaintiffs also identify the benefit of positive publicity associated with the City's apparent endorsement of electric vehicle use. (Pls.' Br. at 18.) These are two plausible benefits conferred on the city and the first requirement of an unjust enrichment claim is properly alleged. The second requirement is met as well. Plaintiffs

13

have properly alleged appreciation of the benefit by the City, in that the City was clearly on notice of the Plaintiffs' installation of the electric vehicle charging stations because this information was part of the applications submitted to the City for a designated parking space. The primary issue, then, is whether or not it would be unjust to permit the City to retain the benefit of the electric vehicle charging stations that Plaintiffs installed without paying for their cost.

We conclude that it would not be. Plaintiffs allege that they had to install the electric vehicle charging stations on public property as a prerequisite to even applying for a designated electric vehicle charging space, and that the City retained full discretion in responding to applications. Plaintiffs thus had no guarantee whatsoever that installation of a charger would lead to approval of a designated parking space next to the charger, and yet they chose to incur the cost of purchasing and installing the chargers anyway. Plaintiffs were aware from the outset that they were benefiting the City by installing infrastructure on City streets, without any assurance of a benefit in return and with no prospect of being reimbursed. The fact that Plaintiffs installed the chargers in order to apply for a twenty-four hour per day reserved parking space that the City later reduced to a twelve hour per day reserved space does not change our evaluation. No Plaintiff was promised <u>any</u> reserved parking space in return for the installation of an electric vehicle charging station; rather, they all chose to pay for the equipment and the installation on City property without a guaranteed return, and with full knowledge that they would be benefiting the City in the particular way they now allege is unjust. This cannot be.

Plaintiffs have failed to state a claim for unjust enrichment. They will have the opportunity to allege additional facts that could sustain this claim. Count III is dismissed without prejudice, with leave to amend.

## IV. Conclusion

Defendant's Motion will be granted in full. Counts I, II, and III are dismissed without prejudice, with leave to amend.

O:\CIVIL 17\17-4213 Morlok v City of Phila\MTD Memorandum_17-4213.docx