Sean P. Whalen (PA Bar ID 200709)
Joseph C. Monahan (PA Bar ID 87173)
VINTAGE LAW LLC
6 Coulter Avenue, Suite 1000
Ardmore, PA 19003
(484) 416-3207 (Whalen)
(484) 413-2319 (Monahan)
sw@vintage-law.com
jm@vintage-law.com

Stephan Matanovic (PA Bar ID 83459)
MATANOVIC LAW LLC
399 Market Street
Suite 360
Philadelphia, PA 19106
(215) 915-7978
smatanovic@matanoviclaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM MORLOK, ADAM NOVICK, THEODORE LEWIS, individually and on behalf of all others similarly situated, | : : : |
| | : |
| Plaintiffs, | : : |
| | : |
| v. | : : : |
| CITY OF PHILADELPHIA, | : : |
| | : |
| Defendant. | : : |

Civil Action No. 17-4213-MMB

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs William Morlok ("Morlok"), Adam Novick ("Novick") and Theodore Lewis

("Lewis") (collectively "Plaintiffs"), on their own behalf and on behalf of all others similarly

situated (the "Putative Class"), bring this complaint against defendant the City of Philadelphia (the "City"), and in support thereof allege as follows:

## NATURE OF THE ACTION

1.    This action arises out of the City's wrongful conduct with respect to elimination of the Plaintiffs' and Putative Class's designated and reserved electric vehicle parking spaces, which Plaintiffs and the Putative Class spent significant funds obtaining, in reliance on the City's ordinance creating a program for the creation and reservation of such parking spaces.  The City's conduct in this regard has caused a deprivation of the rights of Plaintiffs and the Putative Class as guaranteed by the United States Constitution, and violated Pennsylvania law, as detailed below.

2.    Plaintiffs bring this action to vindicate their rights and those of the Putative Class and to enjoin City from its ongoing wrongful conduct which continues to cause irreparable harm to Plaintiffs and the Putative Class.

3.    In the alternative, if the Court determines that injunctive relief is not warranted, Plaintiffs and the Putative Class seek damages in an amount to be proven at trial.

## PARTIES

4.    Plaintiff Morlok is an adult individual residing in Pennsylvania with an address of 2410 Pine Street, Philadelphia, Pennsylvania.

5.    Plaintiff Novick is an adult individual residing in Pennsylvania with an address of 808 South 7th Street, Philadelphia, Pennsylvania.

6.    Plaintiff Lewis is an adult individual residing in Pennsylvania with an address of 1107 Wharton Street, Philadelphia, Pennsylvania.

7. Defendant City is a municipality located in the Commonwealth of Pennsylvania. At all pertinent times it has acted under color of state law.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the parties are all located in this District, the real property interests involved herein are in this District and the transactions and occurrences giving rise to this action took place in this District.

## FED. R. CIV. P. 23 ALLEGATIONS

10. This matter is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) in that:

   (a) The Putative Class, which potentially includes in excess of sixty persons, is so numerous that joinder of all members is impracticable;

   (b) There are substantial questions of law and fact common to the Putative Class;

   (c) The claims of the representative parties are typical of the claims of the Putative Class; and

   (d) The representative parties will fairly and adequately protect the interests of the Putative Class.

11. The case is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(2), in that the City has acted on grounds that apply generally to the Putative Class so that final injunctive relief is appropriate with respect to the Putative Class as a whole.

12.     The case is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(3), in that questions of law or fact common to class members predominate over any questions affecting only individual class members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy.

13.     The relief sought in this action will effectively provide relief to all of the class members.

14.     There are no unusual difficulties foreseen in the management of this class action.

## CLASS DEFINITION

15.     Plaintiffs bring this action on behalf of the following class of similarly situated individuals:

> All persons who applied for and were granted a reserved and designated electric vehicle parking space within the City of Philadelphia pursuant to Philadelphia City Ordinance Section 12-1131, before it was amended effective April 20, 2017.

## FACTUAL BACKGROUND

16.     On or about November 1, 2007, the City, acting through City Council, enacted a new section of the Philadelphia Code, Section 12-1131, entitled "Electric Vehicle Parking." Section 12-1131 in its original form, provided, in pertinent part, as follows:

(3)  Designation of Electric Vehicle Reserved On-Street Parking Space.

(a)  After an investigation determining need has been performed through the Philadelphia Parking Authority with the information set forth in subsection (3)(b) and the Parking Authority has approved of use of the location for practicality and feasibility of traffic operations, the Philadelphia Parking Authority may designate a reserved on-street parking space for electric

vehicles.  Such a reserved space shall not be designated at any location where parking is otherwise prohibited by law.

(b)   When applying for a reserved on-street parking space for the exclusive use of electric vehicles, at least the following information shall be supplied by the applicant to the Philadelphia Parking Authority and, in part, shall be used as criteria for determining the appropriate location for a reserved space for electric vehicles;

(.1)  a Pennsylvania Department of Transportation Vehicle Registration indicating that the vehicle is owned or leased by an individual who is a resident of the address at which the reserved parking space is sought;

(.2)  proof that the owner of the property at which the reserved parking space is sought, if such person is not the applicant, consents to this application;

(.3)  documentation of approval from the Department for the installation of an electrical vehicle charger at the curb immediately adjacent to the electric vehicle parking space, pursuant to any requirements established by the Department by regulation in connection with such approval, including an administrative fee;

(.4)  the written consent of an adjacent neighbor if the Philadelphia Parking Authority determines that it is necessary for the reserved parking to extend in front of that neighbor's property;

(.5)  any other information which the Philadelphia Parking Authority may require.

(c)   The Streets Department shall cause appropriate signs and marking to be placed in and around electric vehicle parking spaces, indicating prominently thereon the parking regulations.  The signs shall state that the parking space is reserved for the exclusive use of electric vehicles and that violators are subject to a fine and removal of their vehicle.

(4)  Prohibitions.  When a sign authorized under Section 12-1131(3)(c) provides notice that a space is a designated electric parking space, no person shall park any non-electric vehicle in a designated electric vehicle parking space.

17.     Section 12-1131 does not require an applicant to actually install an electric vehicle charging station in proximity to the reserved parking space for which they are applying before said application may be submitted.  Instead, the applicant need only present "documentation of

approval from the [Department of Licenses and Inspections ("L&I")] for the installation of an electrical vehicle charger at the curb immediately adjacent to the electric vehicle parking space, pursuant to any requirements established by [L&I] by regulation in connection with such approval, including an administrative fee." Section 12-1131(3)(b)(.3).

18.     Once the reserved parking space has been approved by the City, the applicant then proceeds to install the charging station that L&I previously approved.  After the charging station has been installed to service the approved electrical vehicle parking space, the City posts the signs designating the parking space as one intended for electric vehicles.

19.     Upon receiving an application under Section 12-1131, the City had the discretion to consider whether to approve such application and create a designated reserved electric vehicle parking space, after conducting an "investigation determining need through the Philadelphia Parking Authority" and after the Philadelphia Parking Authority "has approved of use of the location for practicality and feasibility of traffic operations."  The City was thus not required to approve of the application, even if the applicant satisfied all of the criteria set forth in Section 12-1131, but could do so in the exercise of its discretion.

20.     Once the City granted an application in the exercise of its discretion, the City's Streets Department was required to erect a sign at the location of the reserved electric vehicle parking space, designating it as such.  A true copy of the application form, together with the applicable requirements and policies governing same, is attached hereto as Exhibit "A".

21.     As stated on Exhibit "A", in order to ensure that the creation of the reserved electric vehicle spaces did not work to interfere with or eliminate parking spaces available for non-electric

vehicles, it was a requirement in determining whether to grant an application for a 24 hour reserved electric vehicle parking space that:

a)  The proposed space be no more than twenty (2) feet in length (unless the size of the vehicle of the applicant required a longer space;

b)  The proposed space not be located anywhere that parking is prohibited by state or local law;

c)  The proposed space would not require elimination of a metered space;

d)  The location of the space be practical with respect to general parking availability;

e)  No garage, driveway or other location not in the right of way is available to the applicant for parking of an electric vehicle; and

f)  The number of reserved on-street spaces of any kind on a hundred block does not exceed the amounts prescribed by the PPA.

Exhibit A, p. 2.

22.    After the adoption of Section 12-1131, and in reliance thereon, Plaintiffs and the members of the Putative Class each took a series of steps in order to apply for approval of a reserved electric vehicle parking space.

23.    Plaintiffs and members of the Putative Class each applied to the City for approval of a designated electric vehicle parking space and paid all fees associated with such applications.

24.    Plaintiffs and members of the Putative Class each submitted all required materials in support of their respective applications as required by Section 12-1131, including but not limited

to, proof that an electric vehicle had been purchased or leased and registered with the Pennsylvania Department of Transportation to a resident of each of their respective homes.

25.     Moreover, each of the Plaintiffs and members of the Putative Class applied for and obtained approval from L&I to allow for the installation of a curbside electrical charging station, and paid all fees relating to such approval.  As required by Section 12-1331, each of the Plaintiffs and members of the Putative Class submitted, as part of their applications, documentation that they had obtained such approval from L&I.

26.     In response to the respective applications of the Plaintiffs and the Putative Class, the City granted its approval for the reserved, designated electric vehicle parking spaces, and Plaintiffs and the members of the Putative Class thus obtained such a parking space at their respective places of residence, all in conformity with Section 12-1131.

27.     After obtaining approval of the reserved electric vehicle parking spaces, Plaintiffs and the members of the Putative Class installed curbside electrical vehicle chargers adjacent to the areas near their respective residences that had been approved for a reserved electric vehicle parking space pursuant to Section 12-1131(3)(b)(.3), the installation of which chargers was consistent with the previously-obtained approval of L&I.  In installing such chargers, solely at their own cost and expense, Plaintiffs and the Putative Class made substantial improvements to their property which also served and improved public property.

28.     As made clear by a review of Exhibit A, based on the initial application and the fee associated therewith, the reserved electric vehicle parking spaces were supposed to remain for a twelve-month period before Plaintiff and the Putative Class would need to pay an annual renewal

fee.  Exhibit A, p. 3.  Exhibit A also enumerates the grounds under which the spaces may be revoked, stating that revocation is appropriate for any of the following reasons:

    a)  The yearly renewal fee is not paid timely;

    b)  The vehicle registration or license plate for the applicant's electric vehicle is transferred to a non-electric vehicle;

    c)  The electric vehicle that was registered to the applicant's address is transferred to an owner residing at a different address;

    d)  The owner of the electric vehicle ceases to reside at the address for which the reserved parking space was established;

    e)  Any condition necessary for the grant of the reserved parking space ceases to be met;

    f)  The electric charger at the premises is not maintained in good repair or presents a hazard due to deterioration, malfunction or improper use; or

    g)  Any excavation of the right of way for installation or maintenance of the charger or its wiring is not properly restored.

Exhibit A, p. 4.

      29.    On or about April 6, 2017, the City, through City Council, and without due process to the Plaintiffs or members of the Putative Class, passed Bill No. 170093-A, which amended Section 12-1131 by imposing a "moratorium on new electric vehicle parking spaces, under certain terms and conditions." The amendment further changed Section 12-1131(c), providing that instead of the Streets Department posting signs at the existing approved electric parking spaces that prohibited all parking in such spaces by non-electric vehicles, the signs to be posted at the spaces now only reserved those spaces for the use of electric vehicles during the hours from 6:00 p.m. to

6:00 a.m.  Pursuant to the amendment, City Council further provided that the signs were to specifically indicate that non-electric vehicles were permitted to park in the previously electric-vehicle-only spaces for two hours at a time during the hours from 6:00 a.m. to 6:00 p.m.

30.    When presented with Bill No. 170093-A for signature, Mayor James Kenney declined to sign the same, and articulated his disagreement with the amendment.  However, pursuant to the provisions of Section 2-202 of the City's Home Rule Charter, having not been signed and returned to City Council within ten days, the amendment became effective on April 20, 2017 as if the Mayor had signed it.

31.    The City thus deprived each Plaintiff and member of the Putative Class of the reserved electric vehicle parking spaces which they had previously obtained upon application and compliance with the City's ordinance, and upon expending substantial funds in furtherance of such applications.   Instead, under the revised version of Section 12-1131, for twelve hours of every day, non-electric vehicles are now permitted to occupy the parking spaces that were previously designated exclusively for electric vehicles, thus depriving Plaintiffs and the Putative Class of access to their electric vehicle chargers.

32.    The City thus deprived each Plaintiff and member of the Putative Class of the reserved electric vehicle parking spaces despite the absence of any of the enumerated grounds for revocation of the reserved spaces.

**COUNT I – §42 U.S.C. 1983/SUBSTANTIVE DUE PROCESS**

33.    Plaintiffs hereby incorporate the above paragraphs as if fully set forth herein.

34.    Each Plaintiff and member of the Putative Class applied for and were granted a reserved electric vehicle parking space according to the process and standards established and required by the City, as articulated in Section 12-1131, before it was subsequently amended.

35.    In so doing, each Plaintiff and Putative Class member expended substantial sums of money so as to comply with the requirements of Section 12-1131, and made substantial improvements to their own real property, which also served to benefit and improve public property.

36.    Pursuant to Section 12-1131, the City approved the application of each Plaintiff and Putative Class member and designated a reserved electric vehicle parking space in close proximity to their respective homes.

37.    Plaintiffs and the Putative Class have a protectable property interest in the reserved electric vehicle parking spaces and the accompanying access to their charging stations that were approved by the City in response to their respective applications.

38.    By unilaterally amending Section 12-1131 so as to allow non-electric vehicles to park in the parking spaces that previously were reserved exclusively for electric vehicles, the City has retroactively unlawfully deprived each Plaintiff and the Putative Class members of his or her protectable property interest without due process, and has acted arbitrarily in depriving each Plaintiff and the Putative Class members of the reserved parking spaces despite the absence of any of the enumerated grounds for revocation of such spaces.

39.    The right to improve one's real property is a fundamental incident of real property ownership.

40.     The City's amendment to Section 12-1131 works an unconstitutional interference with the fundamental rights of Plaintiff and the Putative Class members to real property ownership.

41.     The City's amendment to Section 12-1131 reflects its policy, practice, procedure and/or custom, and exhibits deliberate indifference to the constitutional rights of Plaintiffs and the Putative Class.

42.     The City's actions are not necessary to further a compelling state interest, nor are they rationally related to serve a legitimate state interest.  As such, they violated Plaintiffs' and the Putative Class's constitutional due process rights and have caused them injury.

43.     Specifically, in the purported interest of freeing up additional street parking across the City of Philadelphia, the City chose to focus on increasing parking for twelve hours per day in a mere sixty eight parking spaces spread across disparate neighborhoods, while at the same time leaving undisturbed a host of spaces in every neighborhood of the City, no doubt numbering in the hundreds, if not the thousands, that would otherwise be available for general street parking were those spaces not occupied by other uses.  These other uses include loading zones, parking spaces exclusively reserved for car share service parking, parking spaces exclusively reserved for handicapped parking, and spaces made unavailable for parking because of the presence of a curb cut to service, among other things, a private driveway or private garage.

44.     Rather than take any measures to increase parking in the City by reducing the number of generally available parking spaces otherwise occupied by the uses detailed above, the City arbitrarily and capriciously chose to focus on allowing the general public to park for twelve hours per day in the sixty-eight spaces at issue herein, failing to move the needle in addressing the City's purported concern regarding increasing available street parking.

45.     The failure of the amended Section 12-1131 to further a legitimate state interest, let alone a compelling one, is particularly exposed when considering all of the restrictions and limitations that already applied to the approval of reserved electric vehicle parking spaces under the original Section 12-1131, which restrictions were designed to preserve adequate general parking on neighborhood streets. *See* Exhibit A, page 2 (no electric vehicle parking space would be approved where it would result in removal of a parking meter, or be impractical regarding general parking availability, or where electric vehicle parking spaces would exceed the proscribed number of such spaces per block, etc.).

46.     The twelve hours of parking that is now available to the public at large in the formerly reserved electric vehicle spaces is a critical deprivation from the perspective of the Plaintiffs and the members of the Putative Class.  Without assurance that they will be able to return to re-charge their vehicles at the charging stations they paid to have installed with the approval and encouragement of the City, Plaintiffs and the members of the Putative Class run the very real risk of running out of power with no way to re-charge their batteries, rendering their electric vehicles useless.

47.     Plaintiffs and the members of the Putative Class have been damaged by Plaintiff's conduct as alleged herein.

### COUNT II – §42 U.S.C. 1983/EQUAL PROTECTION

48.     Plaintiffs hereby incorporate the above paragraphs as if fully set forth herein.

49.     The City's actions have operated to treat Plaintiffs and the Putative Class differently – and far more adversely - than it treats other similarly situated persons.

50.     Specifically, rather than take any action to restrict other parking spaces across the City that would be available for general street parking were those spaces not occupied by other uses, including loading zones, car share service parking, handicapped parking, and spaces made unavailable for parking because of the presence of a curb cut to service, among other things, a private driveway or private garage, the City instead chose to focus solely on the sixty-eight electric vehicle parking spaces that were previously reserved as such due to the actions and expenditures of Plaintiffs and the members of the Putative Class.

51.     There is no permissible basis for the City's arbitrary and capricious discrimination toward and against Plaintiffs and the Putative Class and its decision to treat them differently than others similarly situated as identified above.

52.     The City's actions violated the constitutional equal protection rights of Plaintiffs and the Putative Class and caused injury to each of them.

### COUNT III – UNJUST ENRICHMENT

53.     Plaintiffs hereby incorporate the above paragraphs as if fully set forth herein.

54.     Plaintiffs and the Putative Class have made substantial improvements to their property which also served to improve public property.

55.     The City understood or had knowledge of the benefits conferred upon it by Plaintiffs and the Putative Class.

56.     Specifically, the City has trumpeted its electrical vehicle parking program and Section 12-1131 as evidence of its status as a progressive and environmentally "green" city,

reaping benefits thereby, and encouraged the Plaintiffs and the Putative Class to take advantage of the program by applying for reserved electrical vehicle parking spaces, and to install charging stations to service those spaces.

57.     Moreover, the valuable electric vehicle infrastructure that Plaintiffs and the Putative Class have installed tangibly benefits the City.

58.     Plaintiffs and the Putative Class relied on the City's electric vehicle program and its encouragement to apply for reserved electric vehicle parking spaces.

59.     It was only after the City indicated that they had qualified for the reserved parking places under Section 12-1131 that Plaintiffs and the Putative Class expended the resources to install the chargers and related infrastructure to service those spaces.

60.     By stripping Plaintiffs and the Putative Class of their reserved electric vehicle parking spaces after they had expended substantial funds installing the electrical charging stations servicing those spaces, the City has caused Plaintiffs and the Putative Class to lose the benefit and value of their respective investments in the charging stations, and the improvements they have made to service public property.

61.     At the same time, the City unjustly has gained the value of and been enriched by these improvements.

62.     Plaintiffs and the Putative Class have been injured by the City's actions in this regard.

63.     It would be inequitable and unjust to allow the City to retain the benefits conferred on it by virtue of the improvements Plaintiffs and the Putative Class have made.

WHEREFORE, Plaintiffs respectfully pray for the following relief:

(a)  Certification of the class as described and appointment of named Plaintiffs as representatives of the class, and the undersigned as class counsel;

(b)  Judgment in their favor for preliminary and permanent injunctive relief, enjoining the City from continuing to cause injury to Plaintiffs and the class by denying to them the twenty-four hour reserved and designated electric vehicle parking spaces with access to their charging stations that they previously obtained pursuant to Section 12-1131;

(c)  In the alternative, if the Court determines that injunctive relief is not warranted, any and all monetary damages in an amount to be determined at trial;

(d)  The reasonable costs and attorney's fees incurred herein; and

(e)  Such other and further relief as this Court deems just and equitable.

Dated: May 11, 2018

                                VINTAGE LAW LLC

                                /s/ Joseph C. Monahan
                                Sean P. Whalen (PA Bar ID 200709)
                                Joseph C. Monahan (PA Bar ID 87173)
                                6 Coulter Avenue, Suite 1000
                                Ardmore, PA 19003
                                (484) 416-3207/(484) 413-2319
                                sw@vintage-law.com
                                jm@vintage-law.com

                                MATANOVIC LAW LLC
                                Stephan Matanovic (Pa. Bar ID 83459)
                                399 Market Street
                                Suite 360
                                Philadelphia, PA 19106
                                (215) 915-7978
                                Ssmatanovic@matanoviclaw.com

EXHIBIT A



PHILADELPHIA
Parking Authority

# Electric Vehicle Parking Space Application

701 Market Street, Suite 5400
Philadelphia, Pa 19106
Phone #: 215-683-9738
Fax #: 215-683-9809

Date of Application: _____ / _____ / 20 _____.

Applicant's Name: _____

Mailing/Billing Address: _____
       (Street Address)               (City)       (State)     (Zip Code)
Contact Information:
    Phone #: _____

    E-mail Address: _____ @ _____

---

## Proposed Electric Vehicle Parking Space Information

Address: _____
    (Street Address)              (City)       (State)     (Zip Code)

Are you the owner of the address for the proposed electric vehicle parking space?    Yes      No
    *If No, please obtain consent from the property owner of the proposed address, stating that they have no objection to an electric vehicle parking space being installed on their property on the attached consent form.*

Is the proposed property 20 feet in width?    Yes    No
    *If No, please obtain consent from one of your neighbor's, stating that they have no objection to an electric vehicle parking space infringing upon their property on the attached consent form.*

Please fill in the following vehicle information:

    Make: _____  Model: _____  Year: _____  Vehicle Length: _____ Feet

The following information is to be included with this application. Failure to include any of these items will result in the return of the application. Your application will not begin to be processed until all correct and complete information has been received.

- ➢ Vehicle Registration: registered to the address where the space is sought (upon approval).
- ➢ Driver's License: showing the address where the space is sought.
- ➢ Aforementioned consent of property owner or neighbor.
- ➢ A clear photograph showing the entire area in which the electric vehicle parking space would be located, and the front of all property abutting the proposed electric vehicle parking space.
- ➢ $50 Non-Refundable Application Fee made payable to the "Philadelphia Parking Authority"

### UPON APPROVAL BY THE PHILADELPHIA PARKING AUTHORITY

After the Philadelphia Parking Authority has determined that an electric vehicle parking space is practical, the applicant must apply to the Department of Licenses & Inspections (L & I) for a curb side electric outlet. Below are code requirements and recommendations from the Department of Licenses & Inspections

  - ➢ Installations shall follow the current National Electrical Code and must be performed by a Licensed Electrical Contractor with an electrical permit from Licenses & Inspections
  - ➢ All conductors and equipment used for this installation, including the cord used to connect the vehicle to the receptacle, shall be approved, identified, labeled and listed suitable for the specific purpose, environment and application
  - ➢ Receptacle must be located on a dedicated branch circuit with ground fault circuit protection located in the main panel
  - ➢ A shut-off switch for the receptacle must be installed inside the building at the exit
  - ➢ The receptacle must be tamper-resistant and located within an outdoor, weatherproof, hinged, lockable enclosure to prevent accidental or intentional contact
  - ➢ Location of receptacle must be no higher than 48 inches
  - ➢ There shall be no commercial uses associated with the use of the receptacle
  - ➢ Electrical permit from L & I must be obtained prior to installation of electrical box

---

### UPON APPROVAL BY THE DEPARTMENT OF LICENSES & INSPECTIONS

After the installation of a properly functioning Electric Vehicle Charger, the Philadelphia Parking Authority will post the required signs designating the Electric Vehicle Parking Space

---

### REQUIREMENTS & POLICIES REGARDING AN ELECTRIC VEHICLE PARKING SPACE

  - ➢ The proposed EVPS must be no more than 20 feet in length, unless a greater length is necessary, based on the size of the vehicle

  - ➢ The proposed EVPS shall not be in any location where parking is currently prohibited by state or local law

  - ➢ The proposed EVPS would <u>not</u> require elimination of a metered parking space

  - ➢ The location is practical with respect to general parking availability

  - ➢ No garage, driveway, or other location not in the right of way is available to the applicant for parking of the Electric Vehicle

  - ➢ The number of reserved on-street parking spaces, of any kind, on a hundred block, does not exceed:
    - o On blocks with single-sided parking: two (2), neither of which is an EVPS
    - o On blocks shorter than 500 feet in length, with parking on both sides: three (3),no more than (1) of which is an EVPS
    - o On blocks that are 500 feet or longer in length, with parking on both sides: four (4),no more than (2) of which are EVPSs

- The Philadelphia Parking Authority shall not approve an EVPS where the applicant is liable for any delinquent fines or penalties (i.e., has three open tickets or more)

- An applicant is not entitled to an EVPS based solely any on the purchase or lease of an electric vehicle or the filing an application for an EVPS

- Installation Fee, to be paid upon approval by the Department of Licenses & Inspections:
  - Center City & University City area:
    - $250 per 20 feet of space
  - All other areas of the city:
    - $150 per 20 feet of space

- Yearly Renewal Fee:
  - Center City & University City area: $150 per year
  - All other areas of the city: $75 per year
  - An EVPS may be revoked, and the EVPS and EVC may be removed by the Philadelphia Parking Authority if such yearly renewal fee is not timely paid in accordance with the program

- The person to whom an EVPS has been issued shall immediately notify the Philadelphia Parking Authority, and the EVPS may be immediately revoked, if any of the following events occur:
  - The registration or license plate is transferred to a Non-Electric Vehicle
  - The Electric Vehicle is transferred to another owner who does not reside at the address for which the EVPS was established
  - The owner of the Electric Vehicle ceases to reside at the address for which the EVPS was established

- An EVPS may be revoked under any of the following circumstances:
  - Any condition necessary for the grant of the EVPS under the regulation ceases to be met
  - The EVC or its associated wiring is not maintained in good repair or presents a hazard due to deterioration, malfunction, or improper use
  - Any excavation of the right of way for installation or maintenance of the EVC or associated wiring is not properly restored

- An EVPS should not be treated as a personal parking spot. Anyone with an electric vehicle is allowed to park in the EVPS. Any abuse of the EVPS (i.e., cones, telling other electric vehicle operators they are forbidden to park in the EVPS, etc.) will result in the removal of the space.

_____


## CONSENT OF PROPERTY OWNER

I, (print name) _____ , certify that I am the owner of

(address) _____ .

I understand that my tenant is applying for an Electric Vehicle Parking Space.  If approved, I have no objections to the Philadelphia Parking Authority installing a sign on the sidewalk in front of my property in order to designate such a zone.

Signature: _____     Date: _____  Telephone #: _____

## CONSENT OF ADJACENT PROPERTY OWNER

I, (print name) _____ , certify that I am the owner of

(address) _____ .

I understand that my neighbor is in need of additional footage in order to install an Electric Vehicle Parking Space.  I have no objections to the Philadelphia Parking Authority installing a sign on the sidewalk in front of my property.  I am aware that the footage required may be as little as 2 feet to a maximum of 15 feet depending on the width of my neighbor's home.

Signature: _____     Date: _____  Telephone #: _____

## CONSENT OF ADJACENT PROPERTY OWNER

I, (print name) _____ , certify that I am the owner of

(address) _____ .

I understand that my neighbor is in need of additional footage in order to install an Electric Vehicle Parking Space.  I have no objections to the Philadelphia Parking Authority installing a sign on the sidewalk in front of my property.  I am aware that the footage required may be as little as 2 feet to a maximum of 15 feet depending on the width of my neighbor's home.

Signature: _____     Date: _____  Telephone #: _____

## CERTIFICATE OF SERVICE

I, Joseph C. Monahan, hereby affirm that on May 11, 2018, a copy of the Plaintiffs' First Amended Class Action Complaint was served via the Court's ECF electronic filing system on the following:

Eleanor N. Ewing
Chief Deputy City Solicitor
Benjamin N. Field
Deputy City Solicitor
Amy Kirby
Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
Eleanor.ewing@phila.gov
Benjamin.field@phila.gov
Amy.kirby@phila.gov
*Counsel for Defendant City of Philadelphia*

/s/ Joseph C. Monahan

Dated: May 11, 2018