## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM MORLOK, ADAM NOVICK,** | : | |
| **THEODORE LEWIS, individually and on behalf:** | | |
| **of all others similarly situated,** | : | |
| **Plaintiffs** | : | **CIVIL ACTION 17-4213** |
| | : | |
| **vs.** | : | |
| | : | |
| **CITY OF PHILADELPHIA,** | : | |
| **Defendant** | | |

### DEFENDANT CITY OF PHILADELPHIA'S MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO F.R. CIV. P. 12(b)(6)

Defendant City of Philadelphia, by and through its undersigned counsel, hereby files this Motion to Dismiss Plaintiffs' First Amended Complaint for Failure to State a Claim pursuant to F.R. Civ. P. 12(b)(6).

Pursuant to Local Rule 7.1(c), the City hereby incorporates by reference the attached Memorandum of Law as though fully set forth at length.

Respectfully submitted,

Date: <u>June 5, 2018</u>

<u>/s/Amy M Kirby</u>
Amy M Kirby
Deputy City Solicitor
Pa. Attorney ID No. 323938
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
(215) 683-3566
Amy.Kirby@phila.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| **WILLIAM MORLOK, ADAM NOVICK,** | **:** | |
| **THEODORE LEWIS, individually and on behalf:** | | |
| **of all others similarly situated,** | **:** | |
| **Plaintiffs** | **:** | **CIVIL ACTION 17-4213** |
| | **:** | |
| **vs.** | **:** | |
| | **:** | |
| **CITY OF PHILADELPHIA,** | **:** | |
| **Defendant** | | |

---

## ORDER

  **AND NOW**, this_____day of _____, 2018, upon consideration of the

motion of Defendant City of Philadelphia to dismiss Plaintiffs' First Amended Complaint

pursuant to F.R. Civ. P. 12(b)(6), and any response or lack thereof, it is hereby **ORDERED** and

**DECREED** that this civil action is dismissed with prejudice.

  It is further **ORDERED** and **DECREED** that judgment is entered in favor of Defendant

City of Philadelphia.

       BY THE COURT

       _____

       HONORABLE MICHAEL BAYLSON

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM MORLOK, ADAM NOVICK, | : | |
| THEODORE LEWIS, individually and on behalf: | | |
| of all others similarly situated, | : | |
| Plaintiffs | : | CIVIL ACTION 17-4213 |
| | : | |
| vs. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| Defendant | | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**CITY OF PHILADELPHIA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**
**PURSUANT TO F.R. CIV. P. 12(b)(6)**

Defendant, the City of Philadelphia (the "City"), by and through its undersigned counsel, hereby files this Memorandum of Law in Support of its Motion to Dismiss the First Amended Complaint (the "Amended Complaint") for Failure to State a Claim pursuant to F.R. Civ. P. 12(b)(6).

## I.     Introduction

The Amended Complaint, like its dismissed predecessor, challenges the ability of Philadelphia City Council to amend legislation relating to an issue which impacts a wide variety of City residents, in this instance how to encourage the use of personal electric vehicles ("EV's") in the City while being mindful of the continuing need of all City residents to park their vehicles, electric or non-electric, on highly congested City streets.  Plaintiffs erroneously take the position that amendment of the 2007 Electric Vehicle Ordinance to take a different approach after several years' experience with the law is constitutionally invalid, at least as to the approximately 68 individuals who held permits under the ordinance when the amendment occurred.  They also

wrongly continue to claim that the City's amendment unjustly confers a benefit on the City at Plaintiffs' expense.

Plaintiffs' Amended Complaint, despite some cosmetic changes, fails to correct any of the flaws which led this Court to dismiss their earlier effort.  Plaintiffs are unable to establish any significant protected property interest and certainly not one capable of supporting a substantive due process violation.  Further, Plaintiffs fail to show how they have been treated differently (or at least less favorably) than their non-permit holding EV owner counterparts, in order to find an equal protection violation.  They also fail to plead the elements of unjust enrichment where Plaintiffs alone, and not the City, derive any benefit from Plaintiffs' private chargers which are not part of any future City plans.  Despite this, Plaintiffs demand that this Court preserve indefinitely for them (at least while they continue to own EVs and the homes adjacent to their permitted spaces) exclusive rights to park on the public street in spots essentially reserved for them, to the detriment of their neighbors and, as public documents discussed herein describe, while the City has moved on toward further amendment of the 2007 Electric Vehicle Ordinance and other more effective and egalitarian methods of encouraging wider EV use.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Original EV Parking Ordinance

On November 15, 2007, the City enacted a new section of the Philadelphia Code, Section 12-1131, entitled "Electric Vehicle Parking." (The "EV Ordinance".)  (Plaintiffs' Amended Complaint ¶16, hereinafter "Amend. Compl.".)[1]  The EV Ordinance allowed parking spaces on City streets to be designated for electric vehicle parking 24 hours a day if an applicant for such a

---

[1] For the Court's reference a copy of the 2007 EV Ordinance is attached hereto as Exhibit A as Plaintiffs did not attach it to their Amended Complaint.

space completed all of the requirements set forth in the "Electrical Vehicle Parking Space Application" (the "EV Application") available through the Philadelphia Parking Authority (the "PPA".)  (Amend. Compl. ¶16; Plaintiffs' Exhibit A to its Amended Complaint "Pl. Ex. A".)

Nothing in the EV Ordinance or the EV Application represented, much less guaranteed, that any permit holder would have unfettered 24-hour access to or any property interest in a personal street parking space.  (Amend. Compl. ¶16; Pl. Ex. A.)  To the contrary, the EV Application explicitly states, "An EVPS [Electrical Vehicle Parking Space] should not be treated as a personal parking spot.  Anyone with an electric vehicle is allowed to park in the EVPS.  Any abuse of the EVPS (i.e., cones, telling other electric vehicle operators they are forbidden to park in the EVPS, etc.) will result in the removal of the space."  (Pl. Ex. A at 3.)  After the EV Ordinance was enacted, each of the Plaintiffs took the steps outlined in the EV Ordinance to apply for and be approved for an electric vehicle parking permit for the public street in front of their residences. (Amend. Compl. ¶¶19-26.)

Any individual seeking a EVPS was required to provide a completed application to PPA. Individuals were required to include in that application the vehicle registration for the EV registered to the address where the permitted parking was requested.  If PPA determined that an EV permit at the requested location was practical, the applicant was then required to obtain an electrical permit from Licenses & Inspections ("L&I") to install an EV charging station for their personal use.  Finally, once a properly functioning EV charging station was installed, PPA would post the required signs designating the space as one solely for EV parking.

B. The 2017 Amendment

The EV Ordinance was in place for almost ten years before City Council amended it. (Amend. Compl. ¶29.)  Prior to amending the EV Ordinance, City Council and its appropriate

subcommittees held open hearings to discuss the proposed amendment, including a hearing of Council's Commission on Streets and Services held March 21, 2017. [2]  (A copy of the transcript of this hearing, in relevant part, is attached hereto as Exhibit B.)[3]

At the hearing, Councilman David Oh discussed complaints he had received from Philadelphia residents regarding the 2007 EV Ordinance, in particular the number of spaces reserved for only EVs and the impact that such reserved spaces had on other residents attempting to park in the vicinity of the reserved spaces.  (Exhibit B at 26:11-32:24.)

On March 30, 2017, at a meeting of the full Council, Philadelphia residents voiced their complaints and support for the amendment, including several civic associations.  (Transcript of Counsel of the City of Philadelphia Stated Meeting at 51:20-54:3; 56:3-67:25, attached hereto, in relevant part, as Exhibit C.) [4]  After comments from both opponents and proponents of the amendment, City Council passed Bill No. 170093-A, amending the EV Parking Ordinance (the "Amendment") to include hours restrictions and a moratorium on further electric vehicle permits being issued.  (Amend. Compl. ¶29.)  Specifically, the Amendment read as follows:

> [T]he Parking Authority shall designate no additional electric vehicle parking spaces, pending Council's review of the impact of these spaces on overall parking availability and enactment of further legislation.  During such moratorium on new spaces, all existing Electric Vehicle Parking spaces shall be designated as exclusively reserved for Electric Vehicles only from 6:00 p.m. to 6:00 a.m., and non-electric vehicles shall be authorized to park in electric vehicle parking spaces for no more than two (2) hours between the hours of 6:00 a.m. and 6:00 p.m.

---

[2] This motion assumes the facts in Plaintiffs' Complaint are true, and also draws on public documents available for public review online.  This Court may take judicial notice of these documents and consider them on this motion to dismiss.  *See, e.g., City of Pittsburg v. West Penn Power Co.,* 147 F.3d 256, 259 (3d Cir. 1998); *In re Merck & Co., Sec., Derivative & ERISA Litig.,* 543 F. 3d 150, 153 n.1 (3d Cir. 2008).

[3] The entire transcript of the hearing is publicly available here:
http://legislation.phila.gov/transcripts/Public%20Hearings/streets/2017/ss032117.pdf.

[4] The entire transcript of the meeting is publicly available here:
http://legislation.phila.gov/transcripts/Stated%20Meetings/2017/sm033017.pdf

(Bill No. 170093-A.)  (Amend. Compl. ¶29.)  (The Amendment is attached hereto as Exhibit D.)

C. Plaintiffs' First Complaint Is Dismissed

On September 21, 2017, Plaintiffs filed a putative class action complaint, attempting to assert claims for violation of Procedural and Substantive Due Process, Equal Protection and Unjust Enrichment.  The City filed a Motion to Dismiss on November 3, 2017, Plaintiffs responded on December 1, 2017, and the City replied on December 8, 2017.  Following oral argument on the motion on March 28, 2018, this Court entered an Order on April 27, 2018 (the "Order") dismissing all Counts without prejudice and providing Plaintiffs leave to amend.

In addressing Plaintiffs' claim for violation of Procedural Due Process (the sole claim which Plaintiffs have not reasserted here), the Court correctly looked for any type of protected property interest to which due process would attach.  The only such interest the Court discerned was a legislative benefit, which the legislative body was entitled to change through its regular processes without violating Plaintiffs' rights to procedural due process. (Order at 7-8.)

This Court similarly dismissed Plaintiffs' Substantive Due Process claim.  Correctly determining that the Amendment was a legislative act, the Court concluded that the claim failed so long as the Amendment was rationally related to a legitimate government interest.  (Order at 9-10.)  This Court recognized that the City's interest in increasing available street parking was one of several legitimate government objectives.

Next, this Court dismissed Plaintiffs' Equal Protection claim, finding that the relevant similarly situated group would be all EV owners in Philadelphia who may use the EVPS.  Using this group, this Court determined that the Amendment survived the applicable rational basis

scrutiny, based upon the City's legitimate interest in creating more parking for the general public.

Lastly, the Court dismissed Plaintiffs' Unjust Enrichment claim, reasoning that any benefit which the City allegedly received from Plaintiffs' charging stations (the benefit of the supposed possibility that the charging stations could be converted to public use, and also the benefit of having "positive publicity associated with the City's apparent endorsement of electric vehicle use" (Order at 13)), was not unjust because Plaintiffs understood the risks and expenses involved in installing an electric charging station prior to undertaking the task.  Therefore, any benefit the City may have received was not unjust because Plaintiffs undertook their actions without any guarantee that they would receive a return on their investment.  (Order at 14.)

D.  <u>The Task Force and Further Amendment of the EV Ordinance</u>

As the 2017 Amendment expressly contemplated, City Council continued to determine the "impact of these spaces on overall parking availability and enactment of further legislation" as to the future of EV infrastructure in Philadelphia.  To that end, the "City of Philadelphia Electric Vehicle Policy Task Force" (the "Task Force") was formed, which, according to its resulting report, met over a period of seven months starting in January 2017 before issuing its Policy Recommendations on March 8, 2018 (the "Task Force Report," attached hereto as Exhibit E.)  The Task Force Report was created through collaboration by individuals from several City agencies and three EV permit holders.

The Task Force Report discussed the current technology related to EVs, then offered five strategy recommendations. The first was that the existing EV program be permanently closed to new applications and be phased out through property turnover and a fifteen-year sunset provision.  (Task Force Report at 22.)  It concluded that the current model was not an adequate

long-term solution to encouraging EV growth in the City because the program was not scalable
and did not provide EV charging infrastructure to the public, as opposed to a few permit holders
with access to restricted spaces and private chargers.  (*Id.*)  Specifically, the Task Force Report
recognized that the EV charging stations such as Plaintiffs' were for personal use, rarely
accessible to the public, and relied on electricity from private residences.

Moreover, the Task Force found that there were already significant parking constraints in
neighborhoods, which more EV parking under the existing program would only exacerbate.
(Task Force Report at 18.)  For instance, the Task Force Report determined that there are only a
limited number of EV chargers allowed on city blocks and that once those spaces were reserved
for EVs no more EV chargers were allowed.  (*Id.*)  This worked to reduce parking for non-EV
owners, while at the same time prohibiting additional EV owners from applying for and having
access to chargers for themselves.  The Task Force Report also found that not all residents had
access to curbside parking which also limited the scalability of the program.  (*Id.*)

Based on these findings, the Task Force Report recommended four alternative strategies
to implement and support EV growth in the City.  These included creating more public EV
charging infrastructure, encouraging EV fleet adoption in mass transit, developing a flexible
policy framework that encourages innovation and experimentation, and creating education and
awareness around EV adoption and programs.

Based on the recommendations in the Task Force Report, City Council further amended
the EV Ordinance following public hearings.  In an amendment passed on April 19, 2018, and
signed by the Mayor on April 20 (the "Second Amendment"), the Second Amendment confirmed
that no additional EV parking spaces would be designated and added a sunset provision to the

existing program.[5]  Specifically, under the Second Amendment, all existing permits are eligible

for renewal though 2033 as long as: the permittee continues to own or lease an EV, the permit is

only renewed by the existing permit holder, and any permittee be required to inform and register

with PPA any new EVs.  The Second Amendment further provides that if a current permittee

moves prior to 2033, the EV parking space will be discontinued and all reserved parking signs

and charging stations must be removed.  Lastly, the Second Amendment concluded that the EV

parking program will completely come to an end on January 1, 2033.

Thereafter, on May 11, 2018, Plaintiffs filed their Amended Complaint with no mention

of the Task Force or the Second Amended Ordinance.  The Amended Complaint repeats claims

alleging violations of substantive due process, equal protection and unjust enrichment.

## III.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO F.R. CIV. P. 12(B)(6)

A.  Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2006)).  The

complaint must provide "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

Pursuant to the process articulated in *Twombly* and *Iqbal*, the Court must first identify all

factual allegations that constitute nothing more than "legal conclusions" or "naked assertions,"

and disregard them for purposes of resolving a motion to dismiss.  *Twombly*, 550 U.S at 555,

556; *Iqbal*, 556 U.S. at 678.  Next, the Court must identify "the well-pleaded, nonconclusory

---

[5] For the Court's reference the Second Amendment to the EV Ordinance is attached hereto as Exhibit F.

factual allegations[s]," and, taking them as true, determine whether the complaint states a plausible claim for relief.  *Iqbal* at 679.

Plaintiffs do not meet their burden.  Plaintiffs' allegations, together with the publicly available information which this Court may consider, demonstrate that Plaintiffs fail to state any claim against the City.  Further, Plaintiffs' Amended Complaint does not cure any of the deficiencies of their Original Complaint, demonstrating that further pleadings will be futile. Therefore, the Amended Complaint should be dismissed, with prejudice.

B.   Plaintiffs' Substantive Due Process Claim (Count I of the Amended Complaint) Fails as a Matter of Law and Must be Dismissed

The first step in any due process inquiry is to determine if there is a property interest at stake.  (*See Price v. Pennsylvania Prop. & Cas. Ins. Co. Ass'n.,* 158 F. Supp. 2d 547, 552 (E.D. Pa. 2001) "[t]o prevail on such a substantive due process claim, a plaintiff must establish possession of a protected property interest.").  Challenges brought under substantive due process claims require a more robust property interest than procedural due process to survive a motion to dismiss.  Procedural due process allows for a property interest to stem from a state created benefit.  *Potts v. City of Philadelphia*, 224 F. Supp. 2d 919, 939 (E.D. Pa. 2002).  Substantive due process however, requires a more restrictive approach.  "Even if one assumes the existence of a property right…not every such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution."  *Nicholas v. Pennsylvania State University*, 227 F.3d 133 (3d. Cir. 2000).   The right to an EV parking space on a City street derives solely from a City ordinance, not the Constitution.  Therefore, under a substantive due process analysis, Plaintiffs have not met the burden of showing a constitutionally protected property right and their claim fails.

9

Further, this Circuit has limited protected property rights in the substantive due process context solely to interests in real property. *See Nicholas* at 141. Therefore, in order to bring a successful claim for violation of substantive due process, a claimant must articulate a real property interest that has been improperly interfered with by the Government. Plaintiffs cannot meet this burden.

Plaintiffs first allege that the Amendment deprived them of their "protectable property interest in [a] reserved electric vehicle parking [space]." (Amend. Compl. ¶37.) However, Plaintiffs have no real property interest in a reserved parking space on a city street. For that to be the case, Plaintiffs would have to have some ownership of the street. It is implausible that non-exclusive access to a parking space on a city street could ever create a real property interest, and the facts alleged merely support some form of non-exclusive preferred access. Therefore, Plaintiffs have failed to allege a real property interest sufficient to support a substantive due process claim.

Plaintiffs alternatively argue that the City, in passing the EV Amendment, interfered with their "right to improve one's real property" without articulating what that real property is. (Amend. Compl. ¶39.) Since the real property in question cannot be the city street, the City can only assume that Plaintiffs must be alleging that the Amendment interferes with a perceived right to unlimited use of the charging stations which they installed on the sidewalk adjacent to their spaces. But even before the Amendment, no Plaintiff had full, unfettered access to their charger. The EV-permitted spots were always open to any EV so access to the chargers could always be restricted. The Amendment did not change that fact.

Even if Plaintiffs could articulate a sufficient real property interest, they still fail to state a claim for substantive due process. There are two threads of substantive due process, those

related to legislative actions and those related to executive acts. *Nicholas,* 227 F.3d at 139.

"Non-legislative acts … typically apply to one person or to a limited number of persons,

while legislative acts apply to large portions of society." *Golden Eagle Tavern, Inc. v. City of*

*Lancaster,* No. CIV.A. 13-1426, 2014 WL 881139, at *3 (E.D. Pa. Mar. 6, 2014). A legislative

act will withstand a substantive due process challenge so long as the government can identify a

legitimate government interest that is rationally related to the legislation. *County Concrete Corp.*

*v. Town of Roxbury*, 442 F.3d 169, 159 (3d Cir. 2006). To be rationally related to a legitimate

state interest, "the law need not be in every respect logically consistent with its aims to be

constitutional. It is enough that there is an evil at hand for correction, and that it might be

thought that the particular legislative measure was a rational way to correct it." *Rogin v.*

*Bensalem Twp*., 616 F.2d 680, 689 (3d Cir. 1980) (quoting *Williamson v. Lee Optical,* 348 U.S.

483, (1955)).

As this Court previously recognized, the Amendment is a legislative act. It applies to

people who live, work and visit Philadelphia, and who park on City streets. Therefore, the

Amendment need only be rationally related to a legitimate government interest.[6] Plaintiffs fail to

articulate how or why the City's actions have failed to meet this standard. The Amendment

unquestionably meets the rational relationship requirement and Plaintiffs do not aver to the

contrary. The City's actions unquestionably are rationally related to the legitimate interest of

providing more parking on City streets. The testimony from the City Council hearings plainly

articulated an interest in limiting the number of parking spaces restricted by permitting on City

streets.[7] Limiting the hours that electric vehicles can park in designated parking spaces is one

---

[6] In claiming a substantive due process violation Plaintiffs frequently cite "arbitrary actions" or "deliberate indifference" by the City or the City's alleged failure to "further a compelling state interest". These are not the applicable standards in this context.
[7] See Exhibit B at 27:2-24; 32:7-15; 33:4-24, and Exhibit C at 49:15-54:4.

method of furthering this interest.  Further, the Task Force Report painstakingly outlined why the original EV program (as well as the amended version) failed to support the City's and Plaintiffs' shared goal of furthering EV infrastructure in the City.  Therefore, the City's Amendment was rationally related to the legitimate government interests of increasing parking on City streets, and Plaintiffs' claim fails.

To the extent that Plaintiffs argue that the Amendment only targeted their 68 EV parking spots, and therefore could not effectively solve parking congestion, Plaintiffs misunderstand the rational basis standard.  ("The law need not be in every respect logically consistent with the aims to be constitutional.  It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it."  *Rogan,* 616 F. 2d at 689).  Here, the City recognized that restricted parking was causing parking congestion in certain neighborhoods in the City.  The City determined that one way to solve this problem was to amend the EV Ordinance to free up restricted parking for 12 hours a day.  The Amendment is related to the "evil" of limited parking, and was a rational way to ameliorate this problem.  The fact that there may be other ways to correct the issue, or that Plaintiffs may think that the City's actions are is of no consequence.  Because the City's actions pass a rational basis test, there is no violation of substantive due process.

C. <u>Plaintiffs' Equal Protection Claim (Count II of the Amended Complaint) Fails as a Matter of Law and Must Be Dismissed</u>

In analyzing an Equal Protection claim, "[t]he first step is to examine whether the complaining party is similarly situated to other uses that are permitted.  If the entities are similarly situated, then the City must justify its different treatment of the two under the rational basis test.  Under rational basis, the burden is on the party challenging the validity of the ordinance to establish that the statute is unconstitutional.  The party defending the

constitutionality of the action need only demonstrate some legitimate justification that motivated the action." *CMR D.N. Corp. v. City of Philadelphia*, 829 F. Supp. 2d 290, 303 (E.D. Pa. 2011), *aff'd*, 703 F.3d 612 (3d Cir. 2013) (internal citations omitted).

In their Amended Complaint, Plaintiffs articulate the allegedly similarly situated group as all others who occupy parking spaces that would otherwise generally be available for the public. (Amend. Comp ¶50.)  However, this is not the appropriate class of individuals to compare Plaintiffs against.  As this Court concluded (and the City concurs), the similarly situated group should be all electric vehicle owners in Philadelphia.  (Order at 11.)  In order to determine a similarly situated group, "a plaintiff need not show that comparators are *identical* in all relevant aspects but rather that they share pertinent similarities." *Tucker Indus. Liquid Coatings, Inc. v. Borough of E. Berlin*, 85 F. Supp. 3d 803, 810 (M.D. Pa. 2015), *aff'd*, 656 F. App'x 1 (3d Cir. 2016).  Here, Plaintiffs are charged with pleading pertinent similarities such as how each group obtained any permit or parking access, how long the right to that permit or access was granted, the reasons for granting such permit or access, and what kind of discretion was allowed in granting the permit or access.  As a threshold matter, Plaintiffs have not articulated any facts to establish pertinent similarities, and the amendment should fail on that basis alone. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, (2007)).

Aside from defective pleading, as a matter of law the other groups that Plaintiffs cite are *not* similarly situated and therefore, cannot be the basis for an equal protection claim.  For instance, just a cursory review of the publicly available application for a City of Philadelphia handicap permit highlights that holders of handicap permits are not similar to Plaintiffs.  The handicap permit, (attached here to as Exhibit G), requires a note from a physician detailing the physical disability that requires the space, allows for the permit to be granted indefinitely (with a

13

review every three years), does not require a filing fee for application, and does not require any type of periodic renewal process or fee. These differences alone indicate that Plaintiffs' chosen comparator is not similarly situated to them.

Pertinent similarities are required so that courts can determine if different treatment was given to similar groups. ("Thus, the proponent of the equal protection violation must show that the parties with whom he seeks to be compared have engaged in the same activity vis-à-vis the government entity without such distinguishing or mitigating circumstances as would render the comparison inutile." *Giuliani v. Springfield Twp.,* 238 F. Supp. 3d 670, 702 (E.D. Pa. 2017), *aff'd,* No. 17-1675, 2018 WL 1167524 (3d Cir. Mar. 6, 2018)). Essentially, this means that the other groups permitted or granted parking must have obtained that privilege or right in the same or similar manner as Plaintiffs in order to be found similarly situated for equal protection comparison. Even the cursory review of the requirements to obtain a handicapped permitted parking space indicates that the requirements to obtain and maintain such permits are very different. Yet Plaintiffs have plead nothing to indicate how the alleged comparators are materially similar.

As this Court recognized in its decision dismissing the original complaint, the only truly similarly situated group to Plaintiffs is that of all electric vehicle owners in the City, including those without Plaintiffs' permits. Applying an equal protection analysis to that group, Plaintiffs unquestionably were treated *better*, not worse, than other electric vehicle owners. Specifically, Plaintiffs already possess electrical vehicle permits, and are allowed to continue to utilize the electrical vehicle parking spaces in front of their residence for at least 12 hours a day. On the other hand, electric vehicle owners who were not approved for permits prior to the passing of the

14

amendment are not entitled to a permit at all.  Therefore, even if there was different treatment of the two groups, Plaintiffs were not discriminated against, and their Equal Protection claim fails.

Further, even if Plaintiffs could pass the "similarly situated" threshold based on their articulated groups, the City need only offer legitimate justification for passing the amended statute.  The legislative history of the EV Ordinance and Amendment demonstrate the City's legitimate interest in providing parking for all citizens and making sure that there was a sustainable policy related to electric vehicle parking going forward.  Therefore, there can be no plausible claim for Equal Protection, and this claim should be dismissed.

D.   Plaintiffs' Unjust Enrichment Claim (Count III of the Amended Complaint) Fails as a Matter of Law and Must Be Dismissed

Lastly, Plaintiffs attempt to assert an unjust enrichment claim, but this too fails. In Pennsylvania, an unjust enrichment claim must allege that: (1) plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit. *Com. ex rel. Pappert v. TAP Pharm. Prods., Inc.,* 885 A.2d 1127 (Pa. Commw. 2005).  Further, "[plaintiff] cannot merely allege its own loss as the measure of recovery-i.e., the value of labor and materials expended-but instead must demonstrate that [defendant] has in fact been benefitted…the mere fact that one party benefits from the act of another is not of itself sufficient to justify restitution.  There must also be an injustice in permitting the benefit to be retained without compensation."  *Meehan v. Cheltenham Twp.,* 189 A.2d 593, 596 (Pa. 1963).

Thus, Plaintiffs must first articulate the benefit that the City allegedly received.  (*Canfield v. Statoil USA Onshore Properties Inc.,* No. CV 3:16-0085, 2017 WL 1078184, at *29–30 (M.D. Pa. Mar. 22, 2017), *reconsideration denied,* No. CV 3:16-0085, 2017 WL 2535941 (M.D. Pa.

15

June 12, 2017), (*citing* Restatement First of Restitution §1 cmt. b. "A person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage.  He confers a benefit not only where he adds to the property of another, but also where he saves the other from expense or loss. The word benefit, therefore, denotes any form of advantage.")

The Amended Complaint alleges that the City benefited allowing the City to market itself as progressive and environmentally friendly.  But benefits under an unjust enrichment theory must be more than speculative.  "Unjust enrichment in Pennsylvania does not allow for speculative nor intangible benefits." *Feather v. United Mine Workers of America.*, 711 F.2d 530, 541 (3d Cir. 1983). *See Victaulic Co. v. Tieman,* 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly,* 550 U.S. at 555) (noting that to survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level...."). Here, the only benefit that Plaintiffs allege -- the City's ability to allegedly trumpet the electric vehicle permitting program as a way to promote itself as a progressive and environmentally friendly city, are speculative at best.

What's more, the existence of this speculative benefit is wholly refuted by the subsequently issued public Task Force Report.  More than ten years into the EV program that supposedly brought such positive publicity of Philadelphia's "green" efforts, *only 68* EV permits had been issued.[8]  (Task Force Report at 16.)  Further, of these 68 permits, most charging stations were "located in the City's densest neighborhoods such as Society Hill, Bella Vista,

---

[8] This is only 7% of all EV usage in the City.  (Committee on Streets and Services, April 9, 2018, at 52: 6-16, attached hereto, in relevant part as Exhibit H).  A copy of the full report can be found here: http://legislation.phila.gov/transcripts/Public%20Hearings/streets/2018/ss040918.pdf.

Queen Village, and Fairmount." (*Id.*)  Finally, the Task Force Report found that Philadelphia still

lags behind other major cities in EV readiness.  (Task Force Report at 17.)  Therefore, none of

the so-called benefits that Plaintiffs allege actually came to fruition.  At best they were

speculative, and at worst non-existent.

To the extent that Plaintiffs argue that the City obtained a benefit through the possibility

that their private charging infrastructure offered the possibility of conversion to public use

(although Plaintiffs actually want the opposite – 24 hour a day exclusive use of the spaces with

sole access to their chargers), this too is refuted by the Task Force Report.[9]  Specifically, the

Task Force found that charging stations were primarily for personal use by the EV permit holder

and not designed for more widespread use:

> Although EVPS parking spaces are publicly accessible to all EV's, charging
> stations are primarily built for personal use and are rarely accessible to the public.
> EVPS permit holders are responsible for purchasing and installing charging
> stations, and charging equipment can vary significantly.  The permit holder also
> controls the electricity for their charging station.  Charging stations are primarily
> available to the EVPS permit holder due to low vehicle turnover, limited
> interoperability, and uncertainty regarding electrical use and access.

(*Id.*)  Based on this, as well as a number of other factors, the Task Force Report concluded that

the EV permit program "is not an adequate long-term solution to addressing charging needs and

encouraging EV growth in Philadelphia while also balancing the needs of non-electric vehicle

owners."  (Task Force Report at 18.)

Lastly, even assuming there was any benefit that was appreciated by the City, the

Amended Complaint affords no factual predicate to support the necessary conclusion that the

City's retention of it was "unjust."  The EV applications made clear that permits were not issued

---

[9] Of course, such an argument would be incompatible with Plaintiffs' obvious desire to retain exclusive control of
their chargers so as to ensure that they retain for themselves the benefits and convenience of a charging station right
outside their doors.

in perpetuity.  (Pl. Ex. A.)  Permit renewal fees and compliance with the program were ongoing requirements.  When Plaintiffs applied for and were granted permits, their permit rights were only good for a year.  There is nothing in the permit language that required the City to issue a renewal, and permits were not permanently granted.  Therefore, Plaintiffs did install their chargers fully aware of the risks.

Knowing the confines of the permits, Plaintiffs, of their own accord, undertook to expend money to purchase and install private charging stations for their exclusive use and to apply for permits to the parking spaces without any guarantee of a full or continuing benefit.  Therefore, there is nothing "unjust" about any "enrichment" which the City may have received.

**IV.    CONCLUSION**

For all the reasons discussed herein, the City respectfully requests that its motion to dismiss be granted.  Moreover, Plaintiffs' First Amended Complaint should be dismissed with prejudice, pursuant to F.R. Civ. P 12(b)(6), because this amendment amply demonstrates that any further opportunities would be futile.  Plaintiffs have failed to articulate a cognizable claim upon which relief may be granted.

 /s/ Amy M Kirby

Amy M Kirby
Deputy City Solicitor
Pa. Attorney ID No. 323938
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
(215) 683-3566
amy.kirby@phila.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on the date set forth below, I served a true and correct copy of the foregoing **Motion to Dismiss** by Notice of Docket Activity sent automatically by CM/ECF on the following counsel who are registered as CM/ECF filing users and have consented to accepting electronic service through CM/ECF:

Sean P. Whalen, (PA Bar ID 200709)
Joseph C. Monahan, (PA Bar ID 87173)
VINTAGE LAW LLC
6 Coulter Avenue, Suite 1000
Ardmore, PA 19003

Stephan Matanovic (PA Bar ID 83459)
MATANOVIC LAW LLC
399 Market Street, Suite 360
Philadelphia, PA 19106

Counsel for Plaintiffs
Morlok et al.


BY:   /s/ Amy Kirby
      Deputy City Solicitor


Dated:  June 5, 2018