Sean P. Whalen (PA Bar ID 200709)
Joseph C. Monahan (PA Bar ID 87173)
VINTAGE LAW LLC
6 Coulter Avenue, Suite 1000
Ardmore, PA 19003
(484) 416-3207 (Whalen)
(484) 413-2319 (Monahan)
sw@vintage-law.com
jm@vintage-law.com

Stephan Matanovic (PA Bar ID 83459)
MATANOVIC LAW LLC
399 Market Street
Suite 360
Philadelphia, PA 19106
(215) 915-7978
smatanovic@matanoviclaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

——————————————————x

| | |
|---|---|
| WILLIAM MORLOK, ADAM NOVICK,: THEODORE LEWIS, individually and on: behalf of all others similarly situated, : | Civil Action No. 17- 4213 |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| CITY OF PHILADELPHIA, : | |
| : | |
| Defendant. : | |
| : | |

——————————————————X

### OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS

Plaintiffs William Morlok, Adam Novick, and Theodore Lewis, individually and on behalf

of all others similarly situated, by and through the undersigned counsel, hereby respond in

opposition to the defendant, City of Philadelphia's, Second Motion to Dismiss pursuant to Federal

Rule 12(b)(6). Pursuant to Local Rule 7.1(c), Plaintiffs incorporate by reference their Memorandum of Law as though fully set forth herein.

MATANOVIC LAW LLC

/s/ Stephan Matanovic
Stephan Matanovic (Pa. Bar ID 83459)
399 Market Street
Suite 360
Philadelphia, PA 19106
(215) 915-7978
smatanovic@matanoviclaw.com

VINTAGE LAW LLC
Sean P. Whalen (PA Bar ID 200709)
Joseph C. Monahan (PA Bar ID 87173)
6 Coulter Avenue, Suite 1000
Ardmore, PA 19003
(484) 416-3207 (Whalen)
(484) 413-2319 (Monahan)
sw@vintage-law.com
jm@vintage-law.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

—————————————————————x
WILLIAM MORLOK, ADAM NOVICK,:
THEODORE LEWIS, individually and on:
behalf of all others similarly situated,    :    Civil Action No. 17- 4213
                                            :
Plaintiffs,                                 :
                                            :
v.                                          :
                                            :
CITY OF PHILADELPHIA,                       :
                                            :
Defendant.                                  :
                                            :
—————————————————————X

## **PROPOSED ORDER**

AND NOW, this _____ day of _____, 2018, upon consideration of the

Defendants' Second Motion to Dismiss and Plaintiffs' Response in opposition thereto, it is hereby

ORDERED that the Motion is DENIED.

BY THE COURT:

_____

HONORABLE MICHAEL BAYLSON

Sean P. Whalen (PA Bar ID 200709)
Joseph C. Monahan (PA Bar ID 87173)
VINTAGE LAW LLC
6 Coulter Avenue, Suite 1000
Ardmore, PA 19003
(484) 416-3207 (Whalen)
(484) 413-2319 (Monahan)
sw@vintage-law.com
jm@vintage-law.com

Stephan Matanovic (PA Bar ID 83459)
MATANOVIC LAW LLC
399 Market Street
Suite 360
Philadelphia, PA 19106
(215) 915-7978
smatanovic@matanoviclaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

——————————————————x

| | |
|---|---|
| WILLIAM MORLOK, ADAM NOVICK,: THEODORE LEWIS, individually and on: behalf of all others similarly situated,     : | Civil Action No. 17- 4213 |
| : | |
| Plaintiffs,                              : | |
| : | |
| v.                                       : | |
| : | |
| CITY OF PHILADELPHIA,                     : | |
| : | |
| Defendant.                               : | |
| : | |

——————————————————X

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO

## DEFENDANT'S SECOND MOTION TO DISMISS

Plaintiffs William Morlok, Adam Novick, and Theodore Lewis, individually and on behalf

of all others similarly situated (collectively referred to herein as "Plaintiffs") hereby respond in

opposition to the Second Motion to Dismiss for failure to state a claim filed by the City of Philadelphia (the "City").

## I.    **INTRODUCTION**

As the Court is aware, this action arises out of the City's wrongful conduct with respect to the retroactive elimination of the Plaintiffs' designated and exclusively reserved electric vehicle parking places ("EV Spaces"). Plaintiffs spent significant funds obtaining their respective EV Spaces in reliance on the City's granting them an EV Space pursuant to an ordinance creating a program designed to promote electric vehicle ("EV") use through the City, including the creation and reservation of such parking spaces.[1] Plaintiffs seek to enjoin the City from its ongoing wrongful conduct that continues to cause Plaintiffs irreparable harm. In its Memorandum and Order dismissing the Plaintiff's original Complaint (and granting leave to amend), this Court held that the Plaintiffs have a protectable property interest in the EV Spaces,[2] and that Plaintiffs conferred a benefit on the City by installing EV charging infrastructure that the City has essentially confiscated.[3]

The City's Second Motion to Dismiss is an extension of its misleading, bait-and-switch tactics concerning EVs. In its previous briefing to this Court; at oral argument; and again in this second motion, the City has insisted that it's actions are benevolent and intended to increase the number of available parking spaces for the citizens of Philadelphia. The City's actions, however,

---

[1] Given the current limitations of battery technology, the importance of the EV Spaces cannot be overstated, as without such spaces EVs become virtually unusable. EVs must be plugged in and charged using the electric grid. *See* https://en.m.wikipedia.org/wiki/Electric_vehicle (accessed November 26, 2017).

[2] *See* D.E. 22, at *8.

[3] *See*, D.E. 22, at *13 - *14.

tell a very different story. For example, on June 19, 2018 (during the pendency of this motion) the City, through the Philadelphia Parking Authority, agreed to sell the 2.7 acre public parking lot at the corner of Eighth and Market Streets, to a private developer, for $24.13 million.[4] The plan is to replace the parking with "office, hotel, and retail" uses, removing 31,100 square feet of public parking from the inventory that the city is purportedly protecting. *Id*.

This sale of public parking to a private developer, which will remove hundreds of public parking spots from available inventory, is consistent with the City's attempts to *appear* to be forward thinking about technology and citizens' concerns, while acting very conventionally by selling public land to private hands.[5] Likewise, in November of 2007, the City, very publicly and with great national fanfare, encouraged its residents to buy EVs by passing an ordinance through which City residents could qualify to obtain exclusively reserved EV Spaces.[6] Then, in the spring of 2017, the City passed a new ordinance – retroactively targeted at Plaintiffs – that amended the City's 2007 ordinance and retroactively stripped Plaintiffs of the exclusively reserved EV spaces to which they are entitled and which have already been granted to them.

_____

[4] *See* http://www.philly.com/philly/business/with-24-million-parking-lot-deal-goldenberg-group-mulls-market-east-development-20180619.html?mobi=true (accessed June 29, 2018).

[5] Plaintiffs do not take issue with the sale of Eighth and Market to a developer: the City is free to do so. However, selling this lot (and it's hundreds of parking spots) while claiming that the sixty-eight spots at issue here are necessary to preserving parking in Philadelphia, is, at best, disingenuous.

[6] In reliance on this ordinance, the City induced sixty-eight (68) of its residents – Plaintiffs and the putative class – to spend thousands of dollars to purchase EVs, the required EV-charging equipment, and have said equipment installed, inspected and permitted. Pursuant to the 2007 ordinance, each of the Plaintiffs obtained an exclusively reserved EV space in close proximity to their respective homes, serviced by the EV charging stations and related infrastructure that they purchased and installed.

The City's Second Motion boils down to the same argument raised previously – the 2017 ordinance, and a 2018 amendment that further calcified the City's position,[7] are benign legislation of general application to all Philadelphia residents. Accordingly, the City asserts that Plaintiffs' Amended Complaint should be dismissed because (a) the ordinance passes the deferential standard of review that the City argues should be applied; (b) Plaintiffs' are similarly situated to all other EV owners and, therefore, have no actionable equal protection claims; and (c) the City has not been unjustly enriched as it has not received a benefit. However, in its Memorandum and Order dismissing the Plaintiff's Complaint (and granting leave to amend), this Court held that the Plaintiffs *have a protectable property interest in the EV Spaces*,[8] and that Plaintiffs conferred a benefit on the City by installing EV charging infrastructure that the City has essentially confiscated.[9] These holdings are the law of this case, and the Court should summarily dismiss any attempt to re-litigate these issues.[10] As to the remaining pleading deficiencies identified by the Court, Plaintiff's Amended Complaint adequately re-pleads their claims such that this motion should be denied in full.

The City's argument that it is motivated by *increasing* parking available to the public, while it *removes hundreds of available spots*, is the height of hypocrisy. Its characterization of

---

[7] The 2018 Amendment, based on a non-binding Task Force report, which was signed by the Mayor on April 20, 2018, added a sunset provision to existing spaces, but did nothing to address the grievances raised in the Amended Complaint.

[8] *See* D.E. 22, at *8.

[9] *See*, D.E. 22, at *13 - *14.

[10] The law of the case doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Quincy Mut. Fire Ins. Co. v. Imperium Ins. Co.*, No. 2014-cv-612, at *7 (E.D. Pa. April 16, 2015) (*quoting Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).

the 2017 ordinance and subsequent amendments is equally inaccurate and disingenuous. The 2017 ordinance clearly does not apply to all Philadelphians equally, as it singles out for retroactive treatment the Plaintiffs (the only City residents who had submitted to the City's EV program and obtained exclusively reserved EV Spaces pursuant to their issued EV permits, which required the expenditure of significant sums of money) and impacts Plaintiffs much more harshly than any other City residents (who have suffered no ill effects whatsoever as a result of the EV program).[11]

As described more fully below, the Plaintiffs have stated valid claims based on violation of their rights under the Due Process Clause and the Equal Protection Clause, and have stated a valid state law claim for unjust enrichment. Contrary to the City's contention, the City's passage of the amendment that stripped Plaintiffs' of their EV spaces violates their rights to substantive due process, as retroactive application of the amendment is not rationally related to a legitimate state interest. Plaintiffs' rights under the Equal Protection Clause have also been violated, as the amendment at issue treats them far worse than others similarly situated, a distinction not rationally related to any legitimate state interest. Finally, Plaintiffs have stated a valid unjust enrichment claim, as they have expended significant funds to install charging stations and related infrastructure, which constitute a benefit to the City for which the City has paid nothing, both in terms of the EV charging infrastructure that Plaintiffs have installed, and the reputational "boost"

---

[11] The removal of the hundreds of spaces at Eighth and Market Streets will impact parking in Philadelphia far more significantly than the sixty-eight spaces, distributed throughout the neighborhoods, could ever do.

the City has realized by virtue of the EV Program. Accordingly, the City's Second Motion is without merit and should be dismissed.[12]

## II.  **FACTUAL BACKGROUND**

On November 15, 2007, City Council Bill No. 070788, introduced and championed by then-Council member (now Mayor) James Kenney, added a new section of the Philadelphia Code, Section 12-1131, entitled "Electric Vehicle Parking;" thus, creating the "EV Program". *See* Complaint at ¶ 16. The City launched this groundbreaking EV Program (which Plaintiffs believe to be the first of its kind in the country), which allowed EV drivers to install EV-charging infrastructure in front of their homes and thus promoted EV-use for the obvious environmental benefits, as well as to burnish the City's image as a technology-forward, progressive city.[13] The EV Program recognized that EV Spaces served by EV charging stations were vital to such use because without such exclusively dedicated spaces, EVs are not viable. Pursuant to the EV Program, after conducting an "investigation determining need through the Philadelphia Parking Authority [the "PPA"]" and after the PPA "has approved of use of the location for practicality and feasibility of traffic operations," the PPA had the discretion to consider whether to approve an application and create a designated, exclusively–reserved electric vehicle parking space. *Id.* at ¶

---

[12] Should the Court for any reason grant the City's Second Motion, Plaintiffs respectfully request that the Court grant them additional leave to amend their Complaint to cure any basis for dismissal. *See e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3rd Cir. 2007) ("[I]n civil rights cases, district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.").

[13] *See* http://www.philly.com/philly/business/20150506_Buy_an_electric_vehicle__apply_for_a_city_parking_space_to_charge_it.html (accessed November 26, 2017).

6

17. The EV Program did not require the PPA to approve the application, even if the applicant satisfied all of the criteria set forth in Section 12-1131, but the PPA could do so in the exercise of its discretion, much as it would for a curb cut, loading zone or a handicap parking spot. *Id*.[14]

In reliance on the EV Program, Plaintiffs each:

- purchased or leased an EV – a prerequisite to apply for an EV permit through the EV Program – as defined in Section 12-1131(1);
- registered the EV with the Pennsylvania Department of Transportation;
- applied to the PPA for approval of an EV Space
- paid all fees associated with such applications; and
- submitted all materials in support of their respective applications as required by the PPA and Section 12-1131.

In response to Plaintiffs' respective applications and above-listed actions, the PPA granted its approval for the exclusively–reserved, designated electric vehicle parking spaces, and each Plaintiff thereafter obtained such a parking space at their place of residence, all in conformity with the EV Program. *Id*., at ¶ 23. Upon receiving this approval, Plaintiffs paid for, and arranged for the installation of, an approved EV charger at the curb in front of his or her home, adjacent to the area which he or she desired to have approved for an EV Space pursuant to Section 12-1131(3)(b)(.3);[15]

A total of sixty-eight Philadelphians, residing in various neighborhoods around the City, were issued EV permits pursuant to the EV Program.

---

[14] Once Defendant had granted an application in the exercise of its discretion, the Streets Department was required to erect a sign at the location of the exclusive electric vehicle parking space, designating it as such. *Id*. at ¶ 18.

[15] By installing the curbside electrical vehicle chargers, solely at their own cost and expense, Plaintiffs each made substantial improvements to their own property which benefitted public property by expanding the EV charging infrastructure throughout the City, at no cost to the City. *Id*. at ¶¶ 21- 22.

In a baseless about-face, and in violation of the EV Program and Plaintiffs' EV permits issued thereunder, in April 2017, City Council passed Bill No. 170093-A, which amended Section 12-1131, and which specifically targeted the Plaintiffs with punitive and unlawful retroactive changes to the EV Program.[16] Bill No. 170093-A prevented the issuance of any new EV permits and retroactively stripped Plaintiffs of their EV Spaces, the acquisition of which cost Plaintiffs' tens of thousands of dollars each to obtain in accordance with the EV Program. Specifically, Bill No. 170093-A amended Section 12-1131(c), providing that instead of prohibiting all parking in EV Spaces by non-EVs, the spaces were now only reserved for EV use from 6:00 p.m. to 6:00 a.m. *Id.* at ¶ 24. In short, from 6:00 a.m. to 6:00 p.m., anyone can park in front of the Plaintiffs' EV charging stations, blocking their owners from the ability to use their own property, rendering the EV useless if the battery happens to be discharged. *Id.*[17]

---

[16] The City's contention, raised throughout its Memorandum, that the changes to the EV Program impact "all Philadelphians," is flatly misleading; only Plaintiffs have EV parking spaces, and, therefore, only Plaintiffs were hurt by the amendments. The amendments to the EV Program are similar to a bill of attainder, legislative action that retroactively impacts either a named individual or easily ascertained members of a group so as to inflict punishment on them without a trial. *See Artway v. Att'y Gen. of N.J.*, 81 F.3d 1235, 1247 (3rd Cir.1996) (*quoting Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798) (citations omitted). The amendments to the EV Program do precisely that: the ordinance adversely impacts "easily ascertained members of a group" (the Plaintiffs) and targets them for availing themselves of the original EV Program. "[W]hether legislative action curtailing a privilege previously enjoyed [such as the exclusive EV parking] amounts to punishment depends upon 'the circumstances attending and the causes of the deprivation.'" *Garner et al. v. Bd. of Public Works of City of Los Angeles, et al.*, 341 U.S. 716, 722, 71 S.Ct. 909 (1951)(citations omitted). The fact that the amendment to the EV Program operated retroactively to cause harm to Plaintiffs eviscerates the City's argument that it was merely a legislative act affecting all Philadelphians.

[17] As set forth above, a subsequent amendment in 2018 added a sunset provision to the 2017 ordinance but did not address Plaintiff's concerns raised in this litigation.

## II.     Standard of Review

Fed. R. Civ. P. 12(b)(6) imposes a significant burden on the moving party, requiring a defendant to demonstrate that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *see Hedges v. United States*, 404 F.3d 744 750 (3rd Cir. 2005). "A complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Determining whether a complaint states a plausible claim for relief will, […], be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* However, the basic tenets of the Rule 12(b)(6) standard of review have remained static. *See Spence v. Brownsville Area Sch. Dist.*, No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. *Phillips v. County of Allegheny*, 515 F.3d 224, 232-34 (3rd Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, the Court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3rd Cir. 2006). Put simply, the Court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Pinkerton v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3rd Cir. 2002).

Here, Plaintiffs' Amended Complaint properly addresses the shortcomings identified by the Court in its April 27, 2018 Memorandum and Order, and sufficiently sets forth claims for relief against the City. Therefore, the Court should deny the City's Second Motion in its entirety.

III.   **ARGUMENT**

    A.    **Plaintiffs Have Adequately Pleaded Their Due Process Claim**

        1.    **Plaintiffs Have Stated a Claim For Violation Of Their Substantive Due Process Rights**

As the Court notes in its April 27, 2018 Memorandum and Order, the Due Process Clause of the Fourteenth Amendment has a substantive element, which bars certain actions by the government regardless of the fairness of procedures in place to implement them. *See* D.E. 22, at *9; *see also Planned Parenthood of S. E Pa. v. Casey, 505 U.S. 833*, 846, 112 S. Ct. 2791 (1992). All of the fundamental rights encompassed in the term "liberty" are protected by the Constitution from invasion by the States. *Id.* at 847, 112 S. Ct. 2791. "Neither the Bill of Rights nor the specific practices of States at the time of the adoption of the Fourteenth Amendment marks the outer limits of the substantive sphere of liberty which the Fourteenth Amendment protects." *Id.* at 848, 112 S. Ct. 2791. A deprivation by state officials which does not offend procedural due process may still give rise to a substantive due process claim "upon allegations that the government deliberately and arbitrarily abused its powers." *Nicholas v. Pa. St. U*., 227 F.3d 133, 139 (3rd Cir. 2000) (internal citation omitted). A property interest that falls under the protection of substantive due process may not be taken by the state for arbitrary, irrational, or improper reasons. *Id.*

In seeking dismissal of Plaintiffs' substantive due process claim in the Amended Complaint, the City asserts that the EV Program amendments were the result of a "legislative act affecting anyone requesting an electric vehicle permit in the City of Philadelphia." City's Memorandum at 9. As such, the City argues that the legislative act does not implicate a fundamental right, and that the EV Parking Ordinance must simply be rationally related to a

legitimate government interest. *Id.*[18] Applying that test, the City articulates the legitimate government interest that purportedly justifies the ordinance as "the legitimate interest in providing more parking to residents of the City and limiting the number of parking spaces restricted by permitting on City streets." *Id.* at 11. While the City's characterization of the legality of the ordinance may be valid on a prospective basis, the City's argument again does not withstand scrutiny given the retroactive impact of the 2017 amendment on the Plaintiffs, and it's ongoing campaign to *reduce*, rather than increase, parking spaces available to the citizens of Philadelphia.

Legislation having a retroactive effect has long been disfavored, as recognized by several provisions of the United States Constitution, including the Ex Post Facto clause, the Contracts Clause, the Takings Clause, the prohibition against bills of attainder and the Due Process Clause. *Landgraf v. USI Film Products*, 114 S. Ct. 1483, 1497, 511 U.S. 244, 265-66 (1994). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. . . . In a free dynamic society, creativity in both commercial and artistic endeavors is fostered by a rule of law that gives people confidence about the legal consequences of their actions." *Id.*  As the Supreme Court recognized in *Landgraf*, a legislative body's "unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration. Its responsivity to political pressures poses a risk that it may be tempted to use

---

[18] The Court correctly noted that Plaintiffs *do have a property right in the EV spaces*. *See* D.E. 22, at *8 (emphasis added). The amendment to the EV Program has operated to severely interfere with the Plaintiffs with respect to ownership of this property. Specifically, in reliance on the City's EV Program, Plaintiffs have made substantial valuable improvements to their real property in the form of the charging stations and related infrastructure, which have also served to benefit the City. Once the EV Program amendment was enacted, however, Plaintiffs were deprived of the full value and benefit of the improvements to their property.

retroactive legislation as a means of retribution against unpopular groups or individuals." *Id*. at 1497, 511 U.S. at 267. Most pertinent for purposes of the instant case, the *Landgraf* Court noted that "a justification sufficient to validate a statute's prospective application under the [Due Process] Clause 'may not suffice' to warrant its retroactive application." *Id*. at 1497, 511 U.S. at 266 (citation omitted). *See also Lewis v. Rendell*, 501 F. Supp. 2d 671, 689 (E.D. Pa. 2007) (retroactive aspects of legislation must satisfy due process separate and apart from the prospective aspects, and the justification for one may not suffice for the other).

It is important to remember that this case pertains to a mere sixty-eight parking spaces, distributed in various neighborhoods across one of the largest cities in the country. Even assuming, as the City contends, that the ordinance need only be "rationally related to a legitimate state interest", the City's articulation of the interest at stake is insufficient to pass even this deferential standard. Plaintiffs do not contest whether the City has a legitimate interest in "providing more parking to residents" and "limiting the number of parking spaces restricted by permitting on City streets." Indeed, both are legitimate objectives, and Plaintiffs have no quarrel with the EV ordinance as it applies moving forward, even under the 2018 amendments. If the City has concerns regarding a potential future proliferation of EV reserved parking spaces, it is certainly within its power to address that concern through legislative action.[19] However, the Plaintiffs, who made significant expenditures in reliance on their ability to qualify under the EV Program for an exclusively reserved parking space where they can charge their EV, stand in a far different position. The impact of the EV Program amendment is to strip Plaintiffs of their rights to those

---

[19] Armed with notice of the new legislative scheme and what it means for guaranteed access to charging stations, a City resident who has not yet purchased or leased an EV can decide whether it is prudent to make such an investment.

sixty-eight spaces retroactively, all while the city is actively selling *hundreds of other spaces* to developers. It cannot be reasonably maintained that the amended ordinance – as applied to Plaintiffs – is rationally related to a legitimate state interest. To the contrary, as applied to the named Plaintiffs and the other members of the putative class, the amendment is an overly broad and disproportionately heavy-handed measure that only frees up sixty-eight parking spaces in various neighborhoods for twelve hours per day, while at the same time depriving Plaintiffs of their constitutional rights. This is hardly the type of rational relationship between the ordinance and a legitimate state interest that this Court should sanction.

Indeed, adding these sixty-eight parking spaces across the City to the inventory of available parking for twelve hours per day, while simultaneously permanently removing hundreds of spots, does not remotely move the needle towards achieving the City's stated justification for the EV Program amendment. If the City desired to take legislative action that is actually rationally related to the "legitimate interest in providing more parking to residents of the City and limiting the number of parking spaces restricted by permitting on City streets" it could take a number of steps other than to amend the EV Program. Why target these sixty-eight spaces, when the City apparently has taken no action to increase parking by curtailing handicapped parking spaces? Why not limit the spaces reserved for loading zones? Why not target the spaces dedicated to for-profit car share services? Why not reduce the number of curb cuts that eliminate what would otherwise be a legal parking space? Why not preserve a 2.7 acre parking lot for the construction of an office and retail building? Surely any one of those initiatives would preserve more than sixty-eight parking spaces across the City. The City's retroactive targeting of the Plaintiffs' EV parking spaces, and those of the rest of the putative class, is manifestly arbitrary, capricious and not rationally related to the legitimate interest of the City in managing available parking.

**B.      Plaintiffs Have Stated a Claim for Violation of Their Rights to Equal Protection**

As the City notes, in analyzing an Equal Protection claim, the "first step is to examine whether the complaining party is similarly situated to other uses that are permitted. If the entities are similarly situated, then the City must justify its different treatment of the two under the rational basis test." City's Memorandum at 12, quoting *CMR D.N. Corp. v. City of Philadelphia*, 829 F. Supp. 2d 290, 303 (E.D. Pa. 2011), aff'd 703 F.3d 612 (3rd Cir. 2013). After that correct statement of the law, the City then presumes to define the "others similarly situated" as all EV owners in the City, and goes so far as to argue that Plaintiffs were actually treated *better* than the other EV owners, not worse. The City is mistaken.

"Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects." *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3rd Cir. 2008). Under that standard, there are stark differences between Plaintiffs and all other EV owners in Philadelphia which render the latter group the wrong population to use for purposes of Equal Protection analysis. One glaring difference is that, unlike Plaintiffs who acquired their EVs and incurred significant expense installing the chargers and related infrastructure at their property in reliance on the ability to obtain an exclusively reserved parking space for such EVs pursuant to the City's former EV Program, none of the other EV owners can make the same claim. Another critical difference is that Plaintiffs are the only persons who are being harmed by the retroactive application of the amendment to the EV Program. Indeed, no other EV owner has been stripped of the exclusively reserved EV parking spaces that had previously been awarded to them.

As set forth with greater specificity in the Amended Complaint, Plaintiffs and the rest of the putative class are those persons or entities who are taking up parking spaces that would otherwise be available to the general public. This includes those with exclusively reserved

handicapped parking spaces, those with exclusively reserved "loading zone" parking spaces, those for-profit car share companies (Zipcar, for example) currently enjoying exclusively reserved parking spaces and those persons or entities using an otherwise public parking space to afford access to their private driveways and garages: the authorizing legislative rubric is identical. In amending the EV Program to retroactively strip Plaintiffs of their exclusively reserved parking spaces in the purported interest of increasing the availability of street parking, while leaving undisturbed all the other similarly situated persons described above, the City has failed the rational basis test. The City's recent agreement to sell the lot at Eighth and Market Streets (and the reduction of parking by hundreds of spaces this presages) exposes this failure to harsh sunlight, and should aid the Court in denying the City's Second Motion.

### C.    Plaintiffs Have Adequately Stated a Claim for Unjust Enrichment

To state a claim for unjust enrichment under Pennsylvania law, a party must plead "(1) benefits conferred on defendants by plaintiffs; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Durst v. Milroy General Contracting*, 52 A.3d 357, 360 (Pa. Super. Ct. 2012); *Sovereign Bank v. BJ's Wholesale Club*, 533 F.3d 162, 180 (3d Cir. 2008) (same). "To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain." *Torchia on Behalf of Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. 1985) (internal quotations omitted); *Meehan v. Cheltenham Twp*., A.2d 593, 595 (Pa. 1963) (holding a party "must demonstrate that appellee has in fact *been benefitted*") (emphasis added).

Here, the Court has recognized that the City has benefited from the Plaintiffs' installation of EV chargers, and will continue to benefit if Plaintiffs' claims are not permitted to proceed: "Plaintiffs have properly alleged a benefit conferred on the City by them, specifically the installation of electric vehicle charging stations on public property… Plaintiffs also identify the benefit of positive publicity…". [20] Plaintiffs - not the City - paid for the expansion of Philadelphia's EV infrastructure, and yet the City retains the benefit of the chargers, both in the form of the potential for an expanded EV charging network,[21] as well as increased publicity and good will relating to the EV Program. Plaintiffs carried out the City's stated goal of expanding EV charging infrastructure beyond parking garages and the airport, and out into the neighborhoods, at no cost to the City, clearly enriching the City at Plaintiffs' expense. As set forth in greater specificity in the Amended Complaint, none of the Plaintiffs actually installed the charging infrastructure *until after their permits were approved. See* Amended Complaint, at ¶ 59. This amendment makes clear that the Plaintiffs only expended the time and money to install their EV chargers *after* they were granted EV Spaces by the City. The Court's concern regarding the third prong of Plaintiff's Unjust Enrichment claim has thus been satisfied.

As stated in the Amended Complaint, the amendments to the EV Program confiscate the Plaintiffs' EV chargers for half of each day (rendering them useless to the owners) while allowing the City to boast of its expanding EV infrastructure, essentially doing the City's work for it. The

---

[20] *See* D.E. 22, at *13.
[21] The City's contention in its Memorandum that the charging infrastructure that Plaintiffs have built is of no value, and would have to be demolished, rings hollow. Converting Plaintiff's chargers to a municipal system would require very little, if any, additional investment, and would save the City thousands of dollars.

City's actions constitute a clear example of unjust enrichment, and the present motion should be denied.

## IV.   <u>CONCLUSION</u>

The City of Philadelphia encouraged the Plaintiffs to spend thousands of dollars to stand at the forefront of technological and environmental activism and the original EV Program put Philadelphia far ahead of its peer cities in embracing EVs. The amendments to the EV Program, however, eviscerated it, depriving Plaintiffs of their constitutional rights to due process and equal protection, and appropriating the Plaintiffs' EV chargers for the City. For the reasons set forth herein, Plaintiffs respectfully request that the Court deny the City's Second Motion to Dismiss and allow their claims to proceed.

MATANOVIC LAW LLC


/s/ Stephan Matanovic
Stephan Matanovic (Pa. Bar ID 83459
399 Market Street
Suite 360
Philadelphia, PA 19106
(215) 915-7978
Ssmatanovic@matanoviclaw.com

VINTAGE LAW LLC
Sean P. Whalen (PA Bar ID 200709)
Joseph C. Monahan (PA Bar ID 87173)
6 Coulter Avenue, Suite 1000
Ardmore, PA 19003
(484) 416-3207 (Whalen)
(484) 413-2319 (Monahan)
sw@vintage-law.com
jm@vintage-law.com



***Attorneys for Plaintiffs***

Dated: July 3, 2018

## **CERTIFICATE OF SERVICE**

I, Stephan Matanovic, hereby affirm that on July 3, 2018, a copy of the Plaintiffs'
Memorandum in Opposition to the City of Philadelphia's Second Motion to Dismiss and
proposed form of Order were served via the Court's ECF electronic filing system on the
following:

Amy M. Kirby Solicitor
Benjamin N. Field
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
Eleanor.ewing@phila.gov
Benjamin.field@phila.gov
*Counsel for Defendant City of Philadelphia*

/s/ Stephan Matanovic