# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MORLOK, et al.,** <br><br> v. <br><br> **CITY OF PHILADELPHIA** | **CIVIL ACTION** <br><br> **NO. 17-4213** |

## MEMORANDUM RE: MOTION TO DISMISS AMENDED COMPLAINT

**Baylson, J.**                                                                                                       **November 21, 2018**

### I. Introduction

In this case, Plaintiffs William Morlok, Adam Novick, and Theodore Lewis allege that Defendant City of Philadelphia ("Defendant" or "the City") violated their federal constitutional rights by amending a statute to change the hours restricting parking in electrical vehicle ("EV") reserved parking spaces. Plaintiffs also allege that the City was unjustly enriched by Plaintiff's installation of curbside EV chargers. Plaintiffs seek to represent a class of individuals who were granted approval for the designation of EV reserved parking spaces next to EV chargers that they paid to install near their homes. Plaintiffs' Amended Complaint alleges three causes of action: (1) a violation of Plaintiffs' rights to substantive due process; (2) a violation of their rights to equal protection; and (3) unjust enrichment. Presently before this Court is Defendant's Motion to Dismiss all three Counts of the Amended Complaint for failure to state a claim for which relief can be granted. For the reasons discussed below, Defendant's Motion to Dismiss is granted as to Plaintiffs' substantive due process and equal protection claims–Counts I and II of the Amended Complaint–and denied as to Plaintiff's unjust enrichment claim–Count III of the Amended Complaint.

### II. Factual Background

Taking Plaintiffs' allegations as true, the factual background is as follows. Plaintiffs

1

Morlok, Novick, and Lewis are all adults residing in Philadelphia, Pennsylvania. (ECF 24, Am. Compl. ¶¶ 4-6.) On or about November 1, 2007, the City Council of the City of Philadelphia enacted Section 12-1131 of the Philadelphia Code, titled "Electric Vehicle Parking." (Id. ¶16.) Section 12-1131, in its original form, provided that that Philadelphia Parking Authority ("PPA") could designate a reserved on-street parking space for EVs "[a]fter an investigation determining need ha[d] been performed through the [PPA] . . . and the [PPA] ha[d] approved of use of the location for practicality and feasibility of traffic operations." (Am. Compl. ¶16) (quoting § 12-1131(3)(a)). The section set out the information that applicants applying for a reserved parking space "for the exclusive use of electric vehicles" were required to provide to the PPA. (Am. Compl. ¶16) (quoting § 12-1131(3)(b)). Each applicant was required to provide proof that the EV was owned or leased by an individual residing at the address where the reserved parking space was sought; proof that the owner of the property, if not the applicant, consented to the application; and proof of approval from the Pennsylvania Department of Transportation for the installation of the electrical vehicle charger at the curb immediately adjacent to the electric vehicle parking space. (Am. Compl. ¶16; § 12-1131(3)(b)(.1)–(.3).) An applicant was not required to install EV chargers to apply for a designated EV parking space. (Am. Compl. ¶17.) Rather, an applicant was only required to present documentation of approval from the Department of Licenses and Inspections for the installation of an EV charger at the curb immediately adjacent to the EV parking space. (Id.) The applicant was required to install the charging station after the City approved the parking space, after which the Streets Department was obligated to post signs designating the parking space as intended exclusively for EVs. (Id. ¶¶ 17–18, 20.)

The decision to approve applications was left to the discretion of the City. (Id. ¶¶ 19–20.) In determining whether to grant an application, the City was required to consider several factors

2

concerning the location and size of the parking space "to ensure that the creation of the reserved electric vehicle space did not . . . interfere with or eliminate parking spaces available for non-electric vehicles." (Id. at ¶ 21; id. Ex. A, EV Parking Space Application.)

Following the adoption of Section 12-1131, Plaintiffs each applied to the PPA for designated EV parking spaces, paid all fees associated with these applications, and submitted all required materials in support of their applications. (Am. Compl. ¶¶ 20–25.) The City granted the applications of Plaintiffs and the Putative Class. (Id. ¶ 26.) After Plaintiffs' applications were granted, each Plaintiff paid to install a curbside EV charger adjacent to the area near his or her respective residence that had been approved for a reserved EV parking space. (Id. at ¶ 27.)[1]

On or about April 6, 2017, the Philadelphia City Council passed Bill Number 170093-A, which amended Section 12-1131 by providing that the signs to be posted at existing approved EV parking spaces would only reserve those spaces for EVs from 6:00 p.m. to 6:00 a.m., rather than for twenty-four-hours per day. (Id. ¶ 29.) The amendment further added that the signs would indicate that non-electrical vehicles were permitted to park in these spaces for up to two hours at a time during the hours of 6:00 a.m. to 6:00 p.m. (Id.)

### III. Procedural History

Plaintiffs filed the Original Complaint in this Court on September 20, 2017 (ECF 1), alleging three Counts against Defendant:

1. **Count I–Due Process**: Defendant violated 42 U.S.C. § 1983 by interfering with Plaintiffs' property interest in the reserved EV parking spaces and access to the adjacent charging stations, without due process;

2. **Count II–Equal Protection**: Defendant violated Plaintiffs' equal protection rights under 42 U.S.C. § 1983 by failing to restrict parking in any parking spaces unavailable for general street parking other than the EV reserved spaces;

---

[1] In total, the City approved sixty-eight electric vehicle reserved parking spaces under Section 12-1131. (Id. ¶ 43.)

3

and

3. **Count III–Unjust Enrichment**: Defendant would be unjustly enriched if it were permitted to retain the benefits conferred on the City by Plaintiffs–the substantial improvements to public property–of which the City denied Plaintiffs the full benefit.

Defendant filed a Motion to Dismiss on November 3, 2017 (ECF 9, "MTD Orig. Compl."), Plaintiffs filed a Response on December 1, 2017 (ECF 13, "Resp. to MTD Orig. Compl."), and Defendant filed a Reply on December 8, 2017 (ECF 14). The Court held oral argument on the motion on March 28, 2018 (ECF 20) and granted Defendant's Motion to Dismiss all Counts without prejudice and with leave to amend on April 27, 2018 (ECF 22, 04/27/18 Opinion; ECF 23, 04/27/18 Order).

Plaintiffs filed an Amended Complaint on May 11, 2018 (ECF 24). The Amended Complaint sets forth the same claims as the Original Complaint with the exception of Count I. The Amended Complaint specifies that Count I only alleges a deprivation of substantive due process, not procedural due process. (Am. Compl. ¶¶ 33–47.) Defendant moved to dismiss all Counts in the Amended Complaint for failure to state a claim on June 5, 2018 (ECF 26, "MTD Am. Compl."), Plaintiffs filed a Response on July 3, 2018 (ECF 29, "Resp. to MTD Am. Compl."), and Defendant filed a Reply on July 17, 2018 (ECF 31, "Rep.").

**IV.    Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## V. Discussion

### A. Parties' Contentions

#### i. Substantive Due Process (Count I)

The City contends that Plaintiffs' Amended Complaint, like the Original Complaint, fails to establish that Plaintiffs have a constitutionally protected property interest in the EV parking spaces capable of supporting a substantive due process claim. (MTD Am. Compl., at 2.) Because protectable property interests are created by the Constitution, and Plaintiffs' rights to EV parking spaces derive from a City ordinance, Plaintiffs' substantive due process claim must be dismissed. (Id. at 10–11.) Setting forth the same arguments as in its Motion to Dismiss the Original Complaint, the City also argues that Plaintiffs have no property interest in EV parking spaces because the spaces were always open to any EV, not exclusively to Plaintiffs' vehicles. (Id. at 10; MTD Orig. Compl., at 7.) Further, according to the City, Plaintiffs cannot hold a

5

property interest in a parking spot on a public street owned by the City. (MTD Am. Compl., at 10.) Even if Plaintiffs did have a property interest in EV parking spaces, the City contends, Plaintiffs' substantive due process claim fails because the amendment to Section 12-1311 is a legislative act that is rationally related to the City's legitimate interest in providing more parking on City streets. (Id. at 11.)

In response, Plaintiffs argue that even if the amendment is constitutional when applied prospectively, the amendment cannot pass muster when applied retroactively. (Resp. to MTD Am. Compl., at 11.) Plaintiffs concede that the City's interests in "providing more parking to residents" and "limiting the number of parking spaces restricted by permitting on City streets" are legitimate objectives. (Id. at 12.) However, Plaintiffs argue that amending Section 12-1131 to strip Plaintiffs of their rights to EV reserved parking spaces retroactively is not rationally related to these objectives. (Id. at 12–13.) According to Plaintiffs, because the City chose to amend Section 12-1311 to achieve these ends, rather than take alternative actions, the amendment does not survive rational basis review. (Id. at 13.)[2] Further, because the City deprived Plaintiffs of the reserved parking spaces despite the absence of the enumerated, statutory grounds for revocation, the City acted arbitrarily, not rationally, in amending Section 12-1131. (Am. Compl. ¶ 38.)

---

[2] Plaintiffs also suggest that retrospective application is subject to a stricter standard than rational basis review, citing Lewis v. Rendell, 501 F. Supp. 2d 671, 689 (E.D. Pa. 2007) (DuBois, J.). (Resp. to MTD Am. Compl., at 12.) In citing to Lewis, Plaintiffs disregard language from the case that undermines their position. Judge DuBois, quoting United States v. Carlton, 512 U.S. 26, 30–31 (1994), did write that "retroactive legislation does have to meet a burden not faced by legislation that has only future effects." However, the remainder of the quotation reads, "[b]ut that burden is met simply by showing that the retroactive application of the legislation is itself justified by rational legislative purpose." Rendell, 501 F. Supp. at 689 (quoting Carlton, 512 U.S. at 30–31) (internal quotation marks omitted). Accordingly, Plaintiffs have failed to show that the retroactive application of the amendment is not subject to rational basis review.

6

### ii. Equal Protection (Count II)

The City contends that the proper "similarly situated" group is other EV owners who could take advantage of reserved EV parking spaces in the City. (MTD Am. Compl., at 13; Rep. at 5.) When compared to other members of this group, the City argues, Plaintiffs are treated better because they have close access to chargers directly in front of their homes, while other EV owners without EV parking permits do not. (MTD Am. Compl., at 14–15; Rep. at 5.) However, the City contends that regardless of how the "similarly situated" group is defined, the amendment is still constitutional because it passes the rational basis test. (MTD Am. Compl., at 15; Rep. at 6.)

Plaintiffs contend that the City misidentifies the persons "similarly situated" under the Equal Protection Clause, putting forth the same argument as in their Response to Defendant's Motion to Dismiss the Original Complaint. (Resp. to MTD Am. Compl. at 14; Resp. to MTD Orig. Compl. at 17.) According to Plaintiffs, the appropriate group consists of persons or entities who are taking up parking spaces that would otherwise be available to the general public, including exclusively reserved handicapped parking spaces; "loading zone" parking spaces; spaces reserved by for-profit car share companies, like Zipcar; and spaces used to afford individuals access to private driveways and garages. (Resp. to MTD Am. Compl. at 14–15.) Plaintiffs argue that because the City chose not to disturb the parking spaces of these individuals, and instead decided to amend Section 12-1311 to deprive Plaintiffs of their exclusive reserved parking spaces, the amendment cannot survive the rational basis test. (Id. at 15.)

### iii. Unjust Enrichment (Count III)

The City contends that Plaintiffs fail to sufficiently allege that the EV charging stations conferred a benefit upon the City. Specifically, the City argues that the benefit Plaintiffs allege–

that the EV permitting program allows the City to promote itself as progressive and environmentally friendly–is too speculative to support an unjust enrichment claim. (MTD Am. Compl., at 16.) Further, the City argues that the City's Task Force Report refutes this speculative benefit, as only sixty-eight permits were issued under the EV program, and Philadelphia still lags behind other major cities in EV readiness. (Id. at 16–17.) Similarly, the City contends that the Task Force Report also undermines Plaintiffs' contention that the City obtained a benefit by allowing for the possibility of converting private charging infrastructure to public use. (Id. at 17.) According to the Task Force Report, charging stations are primarily for personal use by the EV permit holder, and were not designed for more general, widespread use. (Id.)

Even if the charging stations conferred a benefit on the City, the City argues that such a benefit cannot support an unjust enrichment claim because the City's retention of the charging stations was not unjust. (Id.) According to the City, Plaintiffs installed their chargers with no promise that they would be granted permits indefinitely. (Id. at 17–18.) The applications provided circumstances that would warrant the revocation of an EV parking space. (Id. at 18.) When Plaintiffs applied for and were granted permits, such permits were only good for one year, subject to payment of annual renewal fees and compliance with permit requirements. (Id.) In other words, even if Plaintiffs arranged and paid for the installation of EV charging stations after the City approved their applications, Plaintiffs did so without a guarantee that they would have twenty-four-hour access to their EV parking spaces indefinitely. (Rep., at 7.)

Plaintiffs do not specifically address the Task Force Report. Instead, Plaintiffs contend that they state a claim for unjust enrichment because they paid for the expansion of the City's EV infrastructure beyond parking garages and the airport, which the City aimed to do, at no cost to

8

the City.  (Resp. to MTD Am. Compl., at 16.)  Plaintiffs reiterate that they installed the charging stations after their permits were approved such that it would be unjust for the City to retain the chargers.  (Id.)  Plaintiffs do not address the fact that they had no guarantee that they would have twenty-four-hour access to the EV parking spaces indefinitely when they paid to install the chargers.

The Court will take each of the parties' arguments in turn.

### B. Analysis

#### i. Substantive Due Process (Count I)

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  To state a due process claim under 42 U.S.C. § 1983, a plaintiff must establish that defendants, acting under state law, violated the plaintiff's federal constitutional right to due process of law, causing the complained of injury.  Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005).  The Due Process Clause contains a procedural and substantive component.  Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff, 669 F.3d 359, 366 (3d Cir. 2012) (citing Nicholas v. Pa. State Univ., 227 F.3d 133, 139 (3d Cir. 2000)).  Plaintiffs' Amended Complaint only alleges that the City violated their substantive due process rights.

The substantive component of the Due Process Clause "contains two lines of inquiry: one that applies when a party challenges the validity of a legislative act, and one that applies to the challenge of a non-legislative action."  Am. Exp. Travel Related Servs., Inc., 669 F.3d at 366 (citing Nicholas, 227 F.3d at 139).  Where a party challenges the validity of a legislative act, as is

the case here,[3] "the act must withstand rational basis review." Am. Exp. Travel Related Servs., Inc., 669 F.3d at 366 (citing Nicholas, 227 F.3d at 139).

A legislative act withstands rational basis review if the Government demonstrates "(1) the existence of a legitimate state interest that (2) could be rationally furthered by the statute." Am. Exp. Travel Related Servs., Inc., 669 F.3d at 366 (citing Nicholas, 227 F.3d at 139). "The rational basis test, although not a toothless one, requires significant deference to the legislature's decision-making and assumptions." Am. Exp. Travel Related Servs., Inc., 669 F.3d at 366 (internal quotation marks and citations omitted). Accordingly, "a court's inquiry is limited to whether the law 'rationally furthers any legitimate state objective." Id. at 367 (quoting Malmed v. Thornburgh, 621 F.2d 565, 569 (3d Cir. 1980)). In the Third Circuit, "[i]t is enough that the State offers a conceivable rational basis for its action, and '[t]he court may even hypothesize the motivations of the state legislature to find a legitimate objective promoted by the provision under attack.'" Am. Exp. Travel Related Servs., Inc., 669 F.3d at 367 (quoting Malmed, 621 F.2d at 569). It is "constitutionally irrelevant whether this reasoning in fact underlay the legislative decision[.]" Am. Exp. Travel Related Servs., Inc., 669 F.3d at 367 (quoting Flemming v. Nestor, 363 U.S. 603, 612 (1960)). The party challenging the legislative act must "negative every conceivable basis which might support it[.]" Am. Exp. Travel Related Servs., Inc., 669 F.3d at 366 (internal quotation marks omitted (quoting FCC Beach Commc'ns, Inc., 508 U.S. 307, 315 (1993))).

As the Court concluded in the Memorandum granting Defendant's Motion to Dismiss the Original Complaint, the City's amendment to Section 12-1131 clearly survives rational basis

---

[3] The Court concluded in the Memorandum granting Defendant's Motion to Dismiss the Original Complaint that Section 12-1131 is a legislative act. (04/27/18 Opinion, at 9.)

review. In its Motion to Dismiss the Amended Complaint, just as in its Motion to Dismiss the Original Complaint, the City identifies its "legitimate interest [in] providing more parking on City streets [and] . . . in limiting the number of parking spaces restricted by permitting on City streets." (MTD Am. Compl. at 11; MTD Orig. Compl. at 8–9.) The City explains that "[l]imiting the hours that electric vehicles can park in designated parking spaces in one method of furthering this interest." (MTD Am. Compl. at 11–12.) Plaintiffs' Amended Complaint attempts to combat this explanation by highlighting that Section 12-1311 granted the City discretion to grant applications for EV parking spaces if the parking spaces would not interfere with the general availability of street parking. (Am. Compl. ¶¶ 19–21.) These amended allegations do not cure the defects in Plaintiffs' substantive due process claim. Increasing available street parking in the City is a legitimate objective and amending Section 12-1131 to limit EV reserved parking in designated spaces to twelve hours per day is a conceivable rational basis to achieve this objective. Accordingly, the amendment passes rational basis review.

Plaintiffs' contention that the amendment retroactively deprived them of their rights to reserved EV parking spaces does not establish that the amendment was unconstitutional. (See Resp. to MTD Am. Compl., at 11.) As this Court concluded in the Memorandum regarding Defendant's Motion to Dismiss the Original Complaint, the amendment dictates rules regarding EV parking spaces moving forward, not retroactively. (04/27/18 Opinion, at 10.) Further, under both federal and Pennsylvania law, there is a presumption against giving statutes retroactive effect. See Lewis v. Rendell, 501 F. Supp. 2d 671, 691 n.13 (E.D. Pa. 2007). Even where a court construes a civil statute retroactively, the Supreme Court has explained that if "the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive

province of the legislative and executive branches . . . ." United States v. Carlton, 512 U.S. 26, 30–31 (1994) (citing Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 733 (1984)).

As the amendment is rationally related to a legitimate interest, it would still pass muster even if it applied retroactively.[4] Just as this Court concluded when considering Defendant's Motion to Dismiss the Original Complaint, the fact that Plaintiffs point out several other actions that the City could have taken to achieve its legitimate objectives "in no way undermines the rationality of the City's choice to pursue its aim in the particular way it did, by amending Section 12-1131." (04/27/18 Opinion, at 10.) Therefore, the Court concludes that Plaintiffs have failed to state a plausible substantive due process claim.

### ii. Equal Protection Claim (Count II)

To state a claim for denial of equal protection under 42 U.S.C. § 1983 claim, a plaintiff "must prove the existence of purposeful discrimination by demonstrating that, based on membership in a protected class, [they] received 'different treatment from that received by other individuals similarly situated.'" Kazar v. Slipper Rock Univ. of Pa., 679 F. App'x 156, 162 (3d Cir. 2017) (quoting Kennan v. City of Phila., 983 F.2d 459 (3d Cir. 1992)). Individuals are "similarly situated under the Equal Protection Clause when they are alike in all relevant aspects."

---

[4] Plaintiffs' contention that the amendment is similar to a bill of attainder, which retroactively impacts an individual or easily ascertained group so as to inflict punishment on them without a trial, is particularly unpersuasive. (See Resp. to MTD Am. Compl., at 8 n.16.) The amendment did not inflict punishment upon Plaintiffs by limiting the number of hours per day that designated parking spaces are exclusively reserved for EV. The case that Plaintiffs cite for the proposition that the amendment inflicted a punishment upon them, Garner v. Board of Public Works of City of L.A., 341 U.S. 716 (1951), is factually inapposite and its holding undermines Plaintiffs' position. The Supreme Court in Garner concluded that a regulation that provided standards of qualification and eligibility for public employment did not impose punishment. Id. at 722.

Startzell v. City of Phila., 533 F.3d 183 (3d Cir. 2008) (internal quotation marks omitted).

In considering Plaintiffs' equal protection claim, the Court "must [also] determine the appropriate standard by which we are to review the claim." Doe v. Pa. Bd. of Probation & Parole, 513 F.3d 95, 107 (3d Cir. 2008). As the amendment to Section 12-1131 "does not burden a fundamental Constitutional right or target a suspect class[,]" the Court must apply rational basis review. Id. As such, "the challenged classification must be upheld 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Id. (quoting FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)). "[T]he inquiry is 'whether the difference in treatment rationally furthers a legitimate state interest.'" U.S. v. Pollard, 326 F.3d 397 (3d Cir. 2003) (quoting Nordlinger v. Hahn, 505 U.S. 1, 12 (1992)).

Plaintiffs' Amended Complaint fails to state an equal protection claim. As this Court concluded in the Memorandum regarding Defendant's Motion to Dismiss the Original Complaint, the relevant "similarly situated" group is all vehicle owners in Philadelphia who seek to take advantage of the parking spaces reserved for EVs under Section 12-1131. (04/28/18 Opinion, at 11.) Just as the Court noted in its prior Memorandum, Section 12-1131 never created a private right for Plaintiffs to alone enjoy the use of these parking spaces. (Id.) Instead, as the EV Parking Space Application stated, "An [EV Parking Spot] should not be treated as a personal parking spot. Anyone with an electric vehicle is allowed to park in the EVPS." (Am. Compl. Ex. A.)

The Court provided a detailed analysis of the rational basis standard, which the Court must apply in its consideration of Plaintiff's claim, in its Memorandum regarding Defendant's first Motion to Dismiss. (See 04/28/18 Opinion, at 12.) The Court refers to that analysis and does not repeat it here.

### iii. Unjust Enrichment (Count III)

Under Pennsylvania law, the elements of an unjust enrichment claim are "(1) benefits conferred on defendant by plaintiff, (2) appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Argue v. Triton Digital Inc., 734 F. App'x 148, 151 (3d Cir. 2018) (citation and internal quotation marks omitted); Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987).[5] Unjust enrichment does not occur where one party benefits the other; "rather, a plaintiff must show circumstances that would make it 'unconscionable' for the defendant to retain the benefit conferred." Id. (quoting Mark Hershey Farms, Inc. v. Robinson, 171 A.3d 801, 817 (Pa. Super. Ct. 2017)). "The most important factor . . . is whether the enrichment of the defendant is unjust." Argue, 734 F. App'x at 151 (citation and internal quotation marks omitted); EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 273 (3d Cir. 2010) (quoting AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. Ct. 2001) ("[T]he doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.")).

Plaintiffs' Amended Complaint alleges sufficient facts to support an unjust enrichment claim against the City. This Court previously determined that Plaintiffs properly alleged that they conferred plausible benefits on the City, and that the City appreciated these benefits because the City was on notice of Plaintiffs' installation of charging stations, as Plaintiffs were required to

---

[5] In Argue, the Third Circuit held that employers were not unjustly enriched by their former employee's ideas to improve the employers' internet radio software products. 734 F. App'x at 152. The Third Circuit affirmed Judge Kearney's decision to grant summary judgment in favor of the employers because there was no genuine dispute that the employee was simply doing his job when he volunteered his ideas, and he did so without promise or of request for additional compensation. Id. As the present case is only at the pleading stage, the non-precedential holding in Argue is informative, but not binding.

14

submit proof of installation in their applications for designated parking spaces. (04/27/18 Opinion, at 13–14.)[6] Because Plaintiffs alleged in the Original Complaint they were aware that the installation of EV charging stations would not guarantee that the City would approve their applications, this Court held that Plaintiffs failed to show that the City's retention of the charging stations was unjust. (Id. at 14.)

The Amended Complaint, however, clarifies that Plaintiffs and members of the Putative Class did not install chargers until after their applications for designated parking spaces were approved, supporting the plausible inference that the City's retention of the charging stations may be unjust. (See Am. Compl. ¶¶ 17, 25.) This Court previously concluded that the City was "clearly on notice" that Plaintiffs paid to install EV chargers because installation was a prerequisite to applying for designated reserved parking spaces. (04/27/18 Opinion, at 14.) However, the allegations in the Amended Complaint establish that the City was not on notice that Plaintiffs installed chargers before their applications were granted. Rather, the City was on notice that Plaintiffs paid all fees associated with gaining approval for the installation of chargers from the Department of Licenses and Inspections, proof of which was required to apply for designated parking spaces. (See Am. Compl. ¶17.)

Though the parties dispute whether the City actually appreciated a benefit conferred by Plaintiffs, Plaintiffs have alleged sufficient facts to survive a motion to dismiss. The Third

---

[6] The City contends that Plaintiffs did not confer any benefit upon the City, citing the Task Force Report. (See MTD Am. Compl., at 16–17.) The Court must only consider at this stage whether Plaintiffs have alleged facts supporting a plausible benefit that they conferred upon the City, and Plaintiffs have done so. See Victaulic Co. v. Tieman, 499 F.3d 227, 235 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact.'"))). Whether Plaintiffs in fact conferred a benefit upon the City is a dispute appropriate on summary judgment.

15

Circuit has been clear that the crucial element of unjust enrichment is the third element–whether it would be unjust for the City to retain the benefit.  See Argue, 734 F. App'x at 151; EBC, Inc., 618 F.3d at 273.  The fact that Plaintiffs installed chargers without any guarantee of indefinite, twenty-four-hour access to reserved parking spaces, as the City contends, does not change the Court's analysis.  While Plaintiffs may not have had a guarantee of twenty-four-hour access forever when they paid to install the charging stations, they have alleged a guarantee of a designated parking spot that would remain reserved so long as they paid annual renewal fees and complied with permit requirements.

VI.     Conclusion

Defendant's Motion will be granted as to Counts II and II and denied as to Count III.

An appropriate Order follows.

O:\CIVIL 17\17-4213 Morlok v City of Phila\17cv4213 MTD Memorandum 11212018.docx