IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| WILLIAM MORLOK, et al.<br><br>v.<br><br>THE CITY OF PHILADELPHIA | CIVIL ACTION<br><br>NO. 17-4213 |
|---|---|

MEMORANDUM RE: SUMMARY JUDGMENT

Baylson, J.                                                                                                                         August 28, 2020

## I.   INTRODUCTION

This case comes before the Court at the intersection of Philadelphia's parking struggles and its attempt to accommodate the increasing prevalence of electric vehicles within the city. Plaintiffs William Morlok, Adam Novick, and Theodore Lewis ("Plaintiffs") all took part in a municipal program that provided that Philadelphia residents could install an electric vehicle ("EV") charging station at public parking spaces in front of their homes. However, the ordinance did not grant any exclusivity to the resident who installed the charging station. Approximately ten years after the program began, Philadelphia City Council amended the program to allow certain times when combustion engine vehicles could park in the designated spaces.

In response to the change in circumstances, Plaintiffs filed a Complaint against Defendant the City of Philadelphia (the "City") in this Court. Presently, the only remaining claim against the City is that the City was unjustly enriched when it amended the EV program and allowed combustion engine vehicles to park in the spots previously reserved exclusively for EVs. The City has moved for summary judgment. For the reasons stated below, the City's Motion for Summary Judgment will be granted.

1

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The material facts underlying this case are not in dispute. Although Plaintiffs filed a "Statement of Disputed Facts," they do not raise any factual disputes that are material to the resolution of the City's Motion. Therefore, the following facts are primarily drawn from the City's Statement of Undisputed Facts (ECF 56-2 "City's SUF").

In 2007, the City passed an ordinance creating an EV program, which allowed certain parking spaces in Philadelphia to be designated for exclusive, 24-hour EV parking if an applicant met certain conditions and complied with the Philadelphia Parking Authority's (the "PPA") application process. (City's SUF ¶¶ 1–2.) The PPA application warned applicants that the designated parking spaces "should not be treated as a personal parking spot." (City's SUF ¶ 4.) Although the application process for each space was undertaken by an individual EV owner, the space itself could be occupied by any EV, not just the applicant's. (City's SUF ¶ 3.) In other words, the upshot of the 2007 EV program was that it excluded vehicles with combustion engines from parking in the designated spaces.

Each Plaintiff applied for, and received, a parking permit under the EV Program, and installed a personal EV charging station at the parking space in front of his home. (City's SUF ¶¶ 5–6.) As it currently stands, the chargers are each Plaintiff's personal property, and are connected to the owner's private electricity meters. (City's SUF ¶ 13.) Nobody can use the charging stations without the owner's permission.

Following complaints by Philadelphia residents concerning how the EV program exacerbated the City's parking problems, Philadelphia City Council amended the EV ordinance in 2017. (City's SUF ¶¶ 9–10.) The 2017 amendments placed a moratorium on the designation of new EV parking spaces, and restricted the hours in which the existing spaces would be reserved

2

for electric vehicles. (City's SUF ¶ 10.) The spaces remained reserved for exclusive EV parking overnight from 6:00 p.m. to 6:00 a.m., but vehicles with combustion engines could park in the spaces in two-hour increments between 6:00 a.m. and 6:00 p.m. (City's SUF ¶ 10.)

Since the EV ordinance was passed in 2007, Plaintiffs have identified several City publications that mention electric vehicles or the EV program:

- A Philadelphia Greenworks annual report from 2008 identified electric vehicles as an alternative to carbon emitting vehicles. The report noted that "locations to plug in electric vehicles were created on Laurel Street in Northern Liberties," but did not identify those locations as part of the EV program. (ECF 61, Pls.' Opp'n to Def. City of Philadelphia's Mot. for Summ. J. "Pls.' Opp'n" Ex. 13 at 31.)

- In a 2011 Greenworks report, the City explained that it received a grant "to install 20 electric vehicle charging stations." (Pls.' Opp'n Ex. 14 at 4.) There is nothing to suggest that these charging stations were installed as part of the EV program.

- In 2012, a Greenworks report detailed the City's progress in facilitating the use of electric vehicles by describing the City's installation of several additional electric vehicle charging stations. (Pls.' Opp'n Ex. 15 at 25.) Plaintiffs do not contend that these charging stations were installed as part of the EV program.

- A 2014 Greenworks report stated that the City's initiative of "Faclitat[ing] the Use of Electric Vehicles" was "in progress." (Pls.' Opp'n Ex. 16 at 15.) The reported further noted that "the Streets Department issued regulations allowing Philadelphia residents who own or lease an electric vehicle to apply for a reserved electric vehicle parking space on the street in front of their residence." (Pls.' Opp'n Ex. 16 at 15.) The report did not mention any existing charging stations.

- In 2018, a Greenworks report discussed the creation of an Electric Vehicle Policy Task Force that would suggest EV policies to City Council "[t]o help prepare [the] City for these new [electric] vehicles . . . ." (Pls.' Opp'n Ex. 17 at 6.) The EV program and the 2017 amendments were not mentioned in the cited portion of the report, but the task force ultimately recommended ending the EV program.

Plaintiffs also identify a generalized statement about Philadelphia's efforts to lower emissions, as well as tweets from Philadelphia Mayor Jim Kenney about the City's participation in a climate change summit. (Pls.' Opp'n Ex. 13 at 2; Pls.' Opp'n Ex. 12.) Neither the cited statement, nor Mayor Kenney's tweets, mention the EV program or electric vehicles.

To accompany the 2017 amendments, the City developed a task force. After seven months of investigations and deliberations, the task force issued a report, and made several recommendations to City Council. (City's SUF ¶¶ 11–12.) Among other things, the task force determined that the EV program was not scalable, and limited the availability of parking in neighborhoods with EV spaces. (City's SUF ¶¶ 12–15.) Concluding that the EV program was not a viable long-term solution to expanding the City's EV infrastructure, the task force recommended closing the EV program to new applicants, and placing a sunset provision on the entire program. (City's SUF ¶ 12.)

In 2018, after Plaintiffs filed their Complaint in this case, City Council accepted the task force's recommendations, and further amended the EV ordinance to close the application process and set a sunset provision for the program in 2033. (City's SUF ¶ 18–22.)

### III. PROCEDURAL HISTORY

Plaintiffs filed a Complaint in this Court on September 21, 2017, alleging due process and equal protection violations, as well as a claim for unjust enrichment. (ECF 1.) Following the

4

City's Motion to Dismiss, the Court dismissed all three of Plaintiffs' claims, without prejudice, and with leave to amend. (ECF 23.) After Plaintiffs filed an Amended Complaint, (ECF 24), and following a second Motion to Dismiss by the City, the Court dismissed Plaintiffs' constitutional claims, but denied the City's Motion with respect to Plaintiffs' unjust enrichment claim, (ECF 34.)

The case proceeded to discovery, after which the City filed a Motion for Summary Judgment. (ECF 56.) Plaintiffs filed an Opposition, (ECF 61), and the City filed a Reply, (ECF 62.) Plaintiffs also filed a Motion for Class Certification, (ECF 55), to which the City filed an Opposition, (ECF 60.) Plaintiffs did not file a reply brief in support of their Motion for Class Certification. On July 28, 2020, the Court held oral argument on both Motions.[1]

## IV. LEGAL STANDARD

Summary judgment is proper if the movant can establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine—and will preclude a grant of summary judgment—if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a fact "might affect the outcome of the suit under the governing law," the factual dispute is material and will allow the nonmovant to survive summary judgment. Id. Only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party" is a grant of summary judgment appropriate. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, the district court is obligated to "review the record as a whole and in the light most favorable to the nonmovant, drawing reasonable inferences in its favor." In re Chocolate Confectionary Antitrust

---

[1] Because the Court concludes that the City's Motion for Summary Judgment will be granted, it need not decide Plaintiffs' Motion for Class Certification.

Litig., 801 F.3d 383, 396 (3d Cir. 2015).

It is the responsibility of the litigant seeking summary judgment to inform the district court of the basis for its motion and identify the portions of the record that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the burden of proof on a particular issue rests with the nonmoving party at trial, the moving party's initial burden can be met by simply pointing out to the district court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, the nonmoving party must set forth specific facts—through citation to affidavits, depositions, discovery documents, or other evidence—demonstrating the existence of a genuine triable dispute. Fed. R. Civ. P. 56(c).

## V. UNJUST ENRICHMENT IN PENNSYLVANIA

Under Pennsylvania law, unjust enrichment is "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC, 194 A.3d 1010, 1034 (Pa. 2018) (quoting Rothlein v. Protnoff Law Assocs., Ltd., 81 A.3d 816, 825 n.8 (Pa. 2013)). Unjust enrichment is a cause of action sounding in quasi-contract, meaning that rather than imposing obligations based on reciprocal promises or the intent of the parties, unjust enrichment imposes "obligations created by law for reasons of justice." Sevast v. Kakouras, 915 A.2d 1147, 1153 n.7 (Pa. 2007).[2]

The elements of a Pennsylvania unjust enrichment claim are that: (1) the plaintiff confers

---

[2] Unjust enrichment is typically "inapplicable when the relationship between parties is founded upon a written agreement or express contract . . . ." Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006). Neither party asserts the existence of a written agreement or an express contract in this case.

6

a benefit on the defendant; (2) the defendant appreciates that benefit; and (3) the defendant accepts and retains the benefits "under such circumstances that it would be inequitable for [the] defendant to retain the benefit without payment of value." Mark Hershey Farms, Inc. v. Robinson, 171 A.3d 810, 817 (Pa. Super. 2017) (quoting Discover Bank v. Stucka, 33 A.3d 82, 88 (Pa. Super. 2011)). The focus of unjust enrichment is not necessarily on whether events have impaired the plaintiff's position, "but rather on whether the defendant has been unjustly enriched." Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. 1993), aff'd 637 A.2d 276 (Pa. 1994).

## VI. PARTIES' CONTENTIONS

### A. Plaintiffs

Plaintiffs argue that by installing the EV chargers in front of their home, they conferred a benefit on the City in two ways: (1) by expanding the City's EV charging network; (2) by increasing the City's publicity and goodwill through the EV program. (Pls.' Opp'n 9.) As support for Plaintiffs' argument that their participation in the EV program increased the City's publicity and goodwill, Plaintiffs raise Mayor Kenney's tweets and the City's statements in the Greenworks reports as proof that their participation in the EV program had a positive effect on the City's image. (Pls.' Opp'n 10–11.)

At oral argument, Plaintiffs relied exclusively on the 2017 amendments to the EV ordinance as the basis of their claim. (Oral Arg. Tr. 16:19–22.) Plaintiffs contend that, when the City passed the 2017 amendments, the City became unjustly enriched because the amendments rendered Plaintiffs' charging stations inaccessible, and essentially took them away. (Pls.' Opp'n 5–6; Oral Arg. Tr. 32:16–33:2.) According to Plaintiffs, whether this made it unjust for the City to retain the benefits from the EV program is a question that must be resolved by a jury. (Pls.' Opp'n 11–12.)

7

### B. The City

The City asserts that Plaintiffs did not confer any benefit on the City that is cognizable under a claim of unjust enrichment. The City argues that because it does not own or control the charging stations, and Plaintiffs exercise complete control over them, Plaintiffs have not expanded Philadelphia's EV infrastructure in a way that benefits the City. (MSJ 9–11; Oral Arg. Tr. 6:9–21.) Further, the City contends that the reputational benefits asserted by Plaintiffs are too speculative to support a claim of unjust enrichment, and the evidence Plaintiffs raise is not connected to the charging stations that allegedly conferred a benefit on the City. (MSJ 11–13; Reply 10 n.6.)

The City also argues that the its retention of any purported benefit could not be unjust because Plaintiffs received a reciprocal benefit in the form of reduced competition for parking, and the expansion of green programs in Philadelphia, both of which Plaintiffs value. (MSJ 15–17.)

## VII. DISCUSSION

### A. Plaintiffs Have Not Produced Evidence of a Benefit They Conferred on the City

Plaintiffs have failed to produce evidence of a benefit they conferred on the City that is cognizable under a claim of unjust enrichment, and Plaintiffs cannot cite a single state or federal precedent to support the theory of unjust enrichment they advance. "A person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage." Restatement (First) of Restitution § 1, comment b. Plaintiffs retain complete ownership and control over their personal charging stations, and therefore the City cannot be considered enriched by the installation of the

charging stations. Likewise, Plaintiffs' theory of a reputational benefit is too speculative to support a claim of unjust enrichment, and lacks evidentiary support in the record.

### 1. Plaintiffs Retain Ownership and Control Over Their Charging Stations

Plaintiffs' argument that they expanded the City's EV infrastructure is undercut by the undisputed fact that the City exercises no control over Plaintiffs' charging stations, which remain Plaintiffs' personal property. Plaintiffs exclusively reap the tangible benefits of the EV infrastructure created by the charging stations, and, at oral argument, Plaintiffs confirmed that they have no desire for the City to take control of the charging stations. (Oral Arg. Tr. 15:1–2.) Plaintiffs cite no precedent for the proposition that a plaintiff's personal property can confer a benefit on a defendant when the plaintiff exercises complete control over that property. Indeed, Plaintiffs would appear to be entirely within their rights to remove the charging station if they desired to do so. The City cannot have been unjustly enriched if Plaintiffs can freely revoke the infrastructure that supposedly conferred a benefit on the City. Plaintiffs have not, therefore, expanded the City's EV infrastructure in any way that supports a claim of unjust enrichment.

### 2. Plaintiffs Have Not Shown That They Conferred a Reputational Benefit on the City

Plaintiffs' argument that the existence of the EV charging stations conferred a reputational benefit on the City is too speculative to support a claim for unjust enrichment. Plaintiffs have not identified any basis in law for holding a city liable under a theory of unjust enrichment simply because a resident's actions indirectly support the city's publicity efforts. Such a speculative, intangible benefit is simply not recoverable under a claim of unjust enrichment. Cf. Feather v. United Mine Workers of Am., 711 F.2d 530, 541 (3d Cir. 1983) (holding that the enhancement of union organizing efforts was the "type of speculative, intangible benefit [that] is not within the definition of unjust enrichment" such that it would justify imposing prejudgment interest).

Further, Plaintiffs have not produced any evidence capable of establishing a connection between their participation in the EV program, and any enhancement of the City's reputation or promotion of Philadelphia as a green city. The evidence Plaintiffs advance shows only that the City promoted efforts to lower emissions and integrate electric vehicles. It does not link the City's reputation to Plaintiffs' participation in the EV program.

Plaintiffs raise a handful of statements nestled within hundreds of pages of City reports that mention electric vehicles in a general way, and several tweets by Mayor Kenney highlighting the City's participation in a global climate change summit. But Plaintiffs have provided no evidence that their charging stations served as the basis for these statements, or that the statements would have been impossible without their participation. In all of the City's reports, Plaintiffs identify only one mention of the EV program: a discussion of the Philadelphia Streets Department's regulations that allowed residents to begin the process of participating in the EV program. But this statement does not relate to any existing EV infrastructure, and certainly does not reference Plaintiffs' charging stations. That statement, therefore, cannot be connected to Plaintiffs' participation in the EV program.

At bottom, Plaintiffs have failed to identify any statement by the City that leveraged Plaintiffs' charging stations to promote Philadelphia as a green city. All Plaintiffs' evidence shows is that the City generally viewed electric vehicles as a way to advance green initiatives, and that there were plans to promote electric vehicle usage throughout Philadelphia. It does not show that these initiatives actually enhanced the City's reputation, or that the charging stations Plaintiffs installed in any way affected the City's reputation. If Plaintiffs' charging stations did confer a reputational benefit on the City, Plaintiffs have not directed the Court to any evidence of it.

In addition, even if Plaintiffs' evidence did represent a cognizable reputational benefit to

the City, Plaintiffs have offered no method of calculating its value. When a defendant is found to have been unjustly enriched, the plaintiff is entitled to restitution from the defendant. Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006). However, such damages are not recoverable if they are speculative, or cannot "be established with reasonable certainty." Spang & Co. v. U.S. Steel Corp., 545 A.2d 861, 866 (Pa. 1988). Plaintiffs have offered no method by which to identify or measure the reputational benefits they contend they conferred on the City. Any possible reputational value Plaintiffs' charging stations added in the context of the City's complex campaign about its green infrastructure is not the type of calculation a lay jury can reasonably be expected to undertake without resorting to speculation.

Under Plaintiffs' theory of unjust enrichment, EV charging stations in private garages would provide a similar benefit to the City—adding to the EV infrastructure within the City and energizing the City's green image. But the City certainly could not be found to be unjustly enriched through private charging stations in private garages. That Plaintiffs' theory of unjust enrichment would apply to their charging stations, but not to those installed in garages, would create an untenable inconsistency in the doctrine of unjust enrichment. Plaintiffs have not provided evidence from which a reasonable jury could find that Plaintiffs conferred a benefit on the City.

### B. Plaintiffs Have Not Shown a Genuine Issue of Fact Concerning Whether it was Unjust for the City to Amend the EV Ordinance

The doctrine of unjust enrichment "does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. 2001) (citing Styer, 619 A.2d at 350). Instead, to sustain a claim for unjust enrichment, Plaintiffs "must show that [the City] wrongfully secured or passively received a benefit that it would be unconscionable for [it] to retain." Roman Mosaic & Tile Co., Inc. v. Vollrath, 313 A.2d 305, 307 (Pa. Super. 1973) (en banc) (citing In re Brereton's Estate, 130

11

A.2d 453, 457 (Pa. 1957)).  Plaintiffs have failed to present any acceptable theory to demonstrate that the City's amendment resulted in the unjust retention of a benefit.

At oral argument, Plaintiffs confirmed that their unjust enrichment claim hinges on the City's 2017 amendments to the EV ordinance.  (Oral Arg. Tr. 16:19–22.)  Plaintiffs sole argument is that the amendments were unjust because they took Plaintiffs' charging stations away from them.  But this conception distorts how the EV program functioned. Before the 2017 amendments, Plaintiffs did not have exclusive access to the designated parking spaces in front of their homes such that the space could be considered their personal space.  In fact, the PPA's application specifically informed applicants that they should not consider the designated space as their personal parking spot.  (City's SUF ¶ 4.)  The EV spaces were open to any electric vehicle, and only combustible engine vehicles could not park in the designated spaces.

Plaintiffs never had an exclusive, guaranteed right to park at the designated EV parking spaces.  There was always the possibility that another electric vehicle would park in the designated space where Plaintiffs installed their charging stations.  Plaintiffs' theory of unjust enrichment completely ignores that parking is a transitory fact.  The availability of parking at any given place varies depending on the time of the day, the number of vehicles seeking a parking space, and whether an individual is willing to go to a garage, or prefers a street space with a parking meter and time limitations.  These variables can be affected by a number of factors, including the parking space's location in the city, the traffic density in the area, and a variety of economic factors. Plaintiffs' theory does not account for any of these considerations.  While the 2017 amendments opened the spaces to vehicles with combustible engines during certain hours, it did not take away any vested interest Plaintiffs had in the designated parking spaces, because Plaintiffs never had a vested interest to begin with.

Finally, the City was within its right to amend the EV ordinance in 2017. Plaintiffs do not cite any precedent to support their argument that a valid change of law can render a defendant's retention of a benefit unjust. To the contrary, Pennsylvania law allows a city to change the law on a matter of public concern without being subject to a claim for unjust enrichment. See Garofolo, Curtiss, Lambert & MacLean, Inc. v. Commonwealth Dep't of Revenue, 648 A.2d 1329, 1334–35 (Pa. Cmwlth. 1994) (finding that the Commonwealth was not unjustly enriched by changing the law to circumscribe when a company's net operating loss can be carried forward and decrease its present tax liability). Plaintiffs cannot depend on the City's use of legitimate legislative process to support their unjust enrichment claim. Because Plaintiffs have failed to present evidence that supports a viable theory of unjust enrichment, the City's Motion for Summary Judgment will be granted.[3]

## VIII. CONCLUSION

For the reasons stated above, the City's Motion for Summary Judgment will be granted. An appropriate Order follows.

---

[3] Plaintiffs have renewed a previously-denied request to depose members of Philadelphia City Council about the legislative history behind the 2017 amendments to the EV ordinance. (Pls.' Opp'n 12–13.) Plaintiffs' renewed request will be denied as they have not demonstrated how such discovery would lead to relevant, admissible evidence concerning their unjust enrichment claim.